IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

JANE MCGINNIS                          :
                                       :
        Plaintiff,                     :
v.                                     :
                                       :       No. 5:11-CV-284 (CAR)
AMERICAN HOME MORTGAGE                 :
SERVICING, INC.                        :
                                       :
                                       :
        Defendant.                     :
_____      :

ORDER ON MOTION FOR DEFAULT JUDGMENT

This cause comes before the Court on Plaintiff Jane McGinnis' Motion for

Default Judgment [Doc. 6] against Defendant American Home Mortgage Servicing,

Inc. ("AHMSI").  AHMSI was served with a copy of the Complaint on June 26, 2011.

As of the date of this Order, AHMSI has failed to answer or otherwise respond.

Plaintiff filed a Motion for Entry of Default [Doc. 5], which was entered by the Clerk

on August 30.  On September 27 Plaintiff filed this instant Motion requesting default

judgment as to AHMSI's liability and a jury trial to determine the character, extent,

1

measure, and amount of damages.[1]  For the reasons set forth below, Plaintiff's Motion

for Default Judgment [Doc. 6] is **GRANTED in part** and **DENIED in part**.

## FACTUAL BACKGROUND

On October 31, 2011, Plaintiff purchased a home at 172 Hilton Street in

Monticello, Georgia, (the "Property") by obtaining a $72,750.00 loan (the "Mortgage")

financed by Taylor, Bean & Whitaker ("TB&W").  At all relevant times, the Mortgage

was a federally related mortgage loan and was subject to the Real Estate Settlement

Procedures Act, 12 U.S.C. § 1601 et seq., ("RESPA").  That same day, Plaintiff also

purchased several other properties, financed by TB&W.[2]  Although Plaintiff does not

allege in her Complaint that she is a landlord or that the Property was leased during

the relevant time, Plaintiff does allude that the Property was to be leased to tenants.

From her first payment in 2006 until TB&W transferred its rights to servicing

the Mortgage in October 2009, Plaintiff made all of her monthly mortgage payments.

---

[1] According to the record, AHMSI received service of process of the Complaint and Motion for Entry of Default.  However, there is no showing that the Clerk's Entry of Default [text entry, Aug. 30, 2011] or the Motion for Default Judgment [Doc. 6] was served on AHMSI.  Rule 55 of the Federal Rules of Civil Procedure does not require notice to be given to a defendant between the time of service of process and entry of default judgment, but this Circuit has a strong policy of deciding cases on their merits.  See In re Worldwide Sys., Inc., 328 F.3d 1291, 1295 (11th Cir. 2003).  Thus, this lack of notice will be taken into consideration if AHMSI files a motion to set aside the default judgment in this case.  See id.

[2] The instant action involves only the Property and the Mortgage.  The other properties and mortgages are relevant to this action to the extent that is noted below.

On October 17, 2009, AHMSI became the transferee servicer.  In addition to informing Plaintiff of this transfer, AHMSI also enclosed information regarding Plaintiff's rights under RESPA in a letter dated October 27.[3]  As a result, Plaintiff subsequently began to make timely Mortgage payments to AHMSI until and including her final payment in June 2011.

Shortly after the service transfer, AHMSI notified Plaintiff that she had failed to make certain payments to TB&W in the final months prior to the transfer, and now, as a result, was in default.  On December 7, 2009, Plaintiff's son, Adam McGinnis, at all times on behalf of Plaintiff and with Plaintiff's authority, sent AHMSI proof of payment for the alleged defaulted payments and requested that it resolve the dispute. Despite this letter, AHMSI continued to inform Plaintiff that she was in default.  This prompted Plaintiff's son to resend proof of payment, requesting an immediate resolution.  Notwithstanding, AHMSI continued to contact Plaintiff, notifying her that *all* of her loans, including the Mortgage, were in default, and threatening foreclosure of the Mortgage.  Additionally, AHMSI reported Plaintiff's default to the collection agencies employed by AHMSI and the credit reporting bureaus.  Throughout this entire ordeal, the only conceivable response to Plaintiff's December 2009 inquiry was a

---

[3] At some point, AHMSI also began servicing Plaintiff's other mortgages that were initially financed by TB&W.

3

letter from AHMSI that merely informed Plaintiff of the amount that she was allegedly in arrears, including late fees.  This letter was dated June 30, 2010, over six months after Plaintiff's initial correspondence.

Up until March 2011, AHMSI accepted Plaintiff's Mortgage payments without issue.  However, on March 2, AHMSI informed Plaintiff that it was foreclosing on the Property and reimbursed her for her February 2011 payment that it had previously cashed.  Plaintiff continued to make her March, April, May, and June payments to AHMSI; however, AHMSI subsequently returned these payments, refusing to accept them.

Later that March, Plaintiff began to receive notices of foreclosure from McCurdy & Candler, the law firm representing AHMSI in the foreclosure proceedings. Plaintiff's son contacted the attorneys to explain the payment dispute and, in April, provided the firm with proof of payment.  The firm told Plaintiff that it had forwarded this information to AHMSI for review, but that it would be unable to stop the foreclosure proceeding unless AHMSI so instructed.

During April and May of 2011, AHMSI ran a notice of foreclosure in The Monticello News newspaper stating that Plaintiff was in default on the Mortgage and the Property was to be sold at a foreclosure sale.  On June 7, 2011, AHMSI foreclosed

on the Property at the Jasper County Courthouse, selling it to the lender for $25,000.

As a result of the above events, Plaintiff alleges that she has suffered severe and extreme mental and emotional distress, and that she has suffered physically and financially as a result of AHMSI's actions.  Specifically, Plaintiff alleges that she is being treated by a psychologist to ease the stress and anxiety caused by AHMSI's actions and that she is "fearful" that AHMSI will foreclose on her other loans in the same manner, despite her timely payments.  [Doc. 1, p. 16].  Plaintiff additionally alleges that she has suffered a pecuniary loss, including the loss of rental income, as well as damage to her credit reputation.

## DISCUSSION

### A. Default Judgment Standard

Prior to obtaining a default judgment, the party seeking judgment must first seek an entry of default.  Fed. R. Civ. P. 55(a).  Plaintiff has satisfied this requirement. After entry of default, Plaintiff is required to seek default judgment from the Court. Fed. R. Civ. P. 55(b).

The mere entry of default does not mandate the entry of a default judgment. Instead, the Court must find a sufficient basis in the pleadings for the judgment to be entered.  Nishimatsu Constr. Co. Ltd. v. Houston Nat'l Bank, 515 F.2d 1200, 1206 (5th

Cir. 1975).[4]  The defendant is not held to admit facts that are not well-pleaded or to admit conclusions of law.  Id.  The clerk's entry of default causes all well-pleaded allegations of facts to be deemed admitted.  See Buchanan v. Bowman, 820 F.2d 359, 361 (11th Cir. 1987).  The Court must accept these facts as true and determine whether they state a claim upon which relief may be granted.  See Chudasama v. Mazda Motor Corp., 123 F.3d 1353, 1370, n.41 (11th Cir. 1987) (citing Nishimatsu, 515 F.2d at 1206).  The Court must consider whether the unchallenged facts constitute a legitimate cause of action, since the party in default does not admit a mere conclusion of law.  In considering any default judgment, the Court must examine (1) jurisdiction, (2) liability, and (3) damages. See Pitts v. Seneca Sports, Inc., 321 F. Supp. 2d 1353 (S.D. Ga. 2004).    This Court has jurisdiction pursuant to 28 U.S.C. § 1332 (diversity jurisdiction).   The remaining considerations, liability and damages, are discussed below.

## B.  Liability

Plaintiff brings the following ten counts against AHMSI: 1) wrongful foreclosure; 2) violations of §§ 2605(e) and (k) of RESPA; 3) defamation; 4) intentional infliction of emotional distress; 5) conversion; 6) intentional and negligent failure to

---

[4] In Bonner v. City of Pritchard, 661 F.2d 1206, 1209 (11th Cir. 1981), the Eleventh Circuit adopted all cases decided by the former Fifth Circuit before October 1, 1981.

exercise due care in servicing Plaintiff's loan; 7) tortious interference with property rights; 8) negligence per se; 9) attorney's fees and expenses; and 10) punitive damages. AHMSI's liability of each will be assessed below.

    1. <u>Wrongful Foreclosure</u>

    Plaintiff first contends that AHMSI wrongfully foreclosed on her property because she was not in default on her loan.  Under Georgia law, "where a grantee does not comply with the statutory duty under O.C.G.A. § 23-2-114 to exercise fairly the power of sale in a deed to secure debt, the debtor may sue for damages for the tort of wrongful foreclosure."  <u>Calhoun First Nat. Bank v. Dickens</u>, 264 Ga. 285, 285, 443 S.E.2d 837, 838 (1994); <u>see</u> O.C.G.A. § 23-3-114.  Under Georgia law, a party asserting wrongful foreclosure must establish (1) a legal duty owed to it by the foreclosing party, (2) breach of that duty, (3) causal connection between the breach of that duty and the injury sustained, and (4) damages.  <u>Heritage Creek Dev. Corp. v. Colonial Bank</u>, 268 Ga. App. 369, 371, 601 S.E.2d 842, 844 (2004).

    In this case, the Court finds that Plaintiff has sufficiently established a well-pleaded claim for wrongful foreclosure.  Plaintiff's Complaint demonstrates that AHMSI serviced Plaintiff's mortgage and therefore had the legal duty to exercise fairly and in good faith the power of sale in a deed to secure Plaintiff's debt.  Plaintiff has

also sufficiently alleged that she was not in default, and thus, AHMSI breached its duty by foreclosing on her property.  Finally, Plaintiff sufficiently established a causal connection between the breach of AHMSI's duty and the injury she sustained as a result.  Accordingly, because Plaintiff has sufficiently alleged a claim of wrongful foreclosure, default judgment as to this claim is **GRANTED**.

2. RESPA Violations

Plaintiff's second count alleges that AHMSI violated Sections 2605(e) and 2605(k) of RESPA.  First, Plaintiff alleges that, by failing to respond to her qualified written request for information relating to the servicing of her loan, AHMSI violated Section 2605(e).  Under § 2605(e), when a loan servicer receives a qualified written request, it must "provide a written response acknowledging receipt of the correspondence" within twenty days and provide the borrower with the applicable written explanation within sixty days.  Id.

In this case, Plaintiff has sufficiently alleged that her letters and facsimiles to AHMSI constituted qualified written requests.  In her correspondence, Plaintiff requested a print-out of her account history with the alleged past due payments, immediate assistance regarding the misunderstanding, and provided AHMSI with proof of payment.  AHMSI responded, if at all, over six months after Plaintiff's initial

8

request, certainly not within the twenty and sixty-day time periods mandated by the statute.  The Court accordingly finds that Plaintiff has sufficiently alleged that AHMSI violated § 2605(e) of RESPA.  Default judgment as to this claim is therefore **GRANTED**.

Plaintiff also asserts that AHMSI violated § 2605(k).  Specifically, she alleges that AHMSI "did not take timely action to respond to plaintiff's pleas to correct her account, refused to properly investigate its errors, failed to correct false reporting to the credit bureaus and failed to follow standard servicer's duties and standards of care."  [Doc. 1, p. 17].  However, sections 2605(k)-(m) of RESPA, enacted by the Dodd-Frank Wall Street Reform and Consumer Protection Act of 2010, Pub. L. No. 111-203, 124 Stat. 1376 (2010) (the "Act"), are inapplicable to events occurring prior to its effective date of transfer, eighteen months after the Act's enactment date of July 21, 2010.  See Williams v. Wells Fargo Bank N.A., No. 11-21233-CIV, 2011 WL 4368980, *5-7 (S.D. Fla. Sept. 19, 2011) (explaining that §§ 2605(k)-(m) do not come into effect until 18 months after Act's enactment date, and holding that a claim arising prior to the effective date of the Act must be dismissed); see also Gibson v. Chase Home Fin., Lic., No. 8:11-CV-1302-23TBM, 2011 WL 6319401 *6 (M.D. Fla. Dec. 16, 2011) (holding the same).  Here, RESPA § 2605(k) was not in effect prior to the events alleged by Plaintiff.

Accordingly, default judgment is therefore **DENIED** as to this claim.

3. Defamation

Plaintiff next alleges that AHMSI is liable for "publishing false information about her in the newspaper." [Doc. 1, p. 18.]  Under Georgia law, newspaper libel is defined as "[a]ny false and malicious defamation of another in any newspaper, magazine, or periodical, tending to injure the reputation of the person and expose him to public hatred, contempt, or ridicule."  O.C.G.A. § 51-5-2.  Accordingly, Plaintiff must prove five elements: 1) publication 2) of a defamatory statement about the plaintiff 3) which is false 4) that the Defendant is at fault for publishing, and 5) Plaintiff suffered actual injury.  See Bryant v. Cox Enter., Inc., 311 Ga. App. 230 234, 715 S.E.2d 458, 463 (2011).

In this case, Plaintiff's newspaper libel claim is sufficiently alleged.  Plaintiff alleges that AHMSI ran a notice of foreclosure in the Monticello Newspaper from April to May 2011.  The advertisement identifies Plaintiff and the Property by name, and states that the sale is because of "default in the payment of the indebtedness, secured by a Security Deed."  [See Doc. 1, Ex. 16].  Finally, Plaintiff alleges that she was not in default and therefore such an advertisement is false.  Accordingly, the Court finds that Plaintiff has sufficiently alleged a claim for newspaper libel against

AHMSI; default judgment is **GRANTED** as to this claim.

Plaintiff also claims that AHMSI "report[ed] false information about her to the credit bureaus."  [Doc. 1, p. 17].  The Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681h(e), protects companies who furnish information to consumer reporting agencies from state law defamation claims "unless the information it provided was both false and also given with the malicious or willful intent to damage the consumer."  Lofton-Taylor v. Verizon Wireless, 262 Fed. App'x. 999, 1002 (11th Cir. 2008);  Moore v. Equifax Info. Servs., LLC, 333 F. Supp. 2d 1360, 1367 (N.D. Ga. 2004).  The malice or willfulness necessary to overcome the FCRA's qualified immunity includes acting with the knowledge that the information was false or acting with reckless disregard of whether it was false.  Parker v. Parker, 142 F. Supp. 2d 1216, 1227 (M.D. Ala. 2000).  Reckless disregard requires evidence of actual doubt about the truth of the information.  Id.

According to the sufficiently alleged facts in Plaintiff's Complaint, AHMSI made false statements to credit reporting agencies that she had defaulted on her Mortgage payments.  Further, AHMSI made this report after Plaintiff, on more than one occasion, disputed the accuracy of AHMSI's accounting to AHMSI.  Based on these allegations, Plaintiff has alleged that AHMSI knew that Plaintiff was not in

default and nevertheless reported Plaintiff to the credit reporting agencies.   Thus, Plaintiff has alleged sufficient malice in support of her defamation claim.   Finding that Plaintiff's defamation claim is not preempted by § 1681h(e), the Court concludes that Plaintiff has also sufficiently alleged a defamation claim for false reporting to credit bureaus.   Thus, default judgment is **GRANTED** as to this claim.

4.   <u>Intentional Infliction of Emotional Distress</u>

Plaintiff next alleges that AHMSI intentionally inflicted emotional distress. Under Georgia law, a plaintiff must show the following elements in order to establish a claim of intentional infliction of emotional distress: "(1) the conduct must be intentional or reckless; (2) the conduct must be extreme and outrageous; (3) there must be a causal connection between the wrongful conduct and the emotional distress; and (4) the emotional distress must be severe."   <u>United Parcel Svc. v. Moore</u>, 238 Ga. App. 376, 377, 519 S.E.2d 15, 17 (1999).   The Georgia Court of Appeals has recognized on numerous occasions that "an intentional wrongful foreclosure can be the basis for an action for intentional infliction of emotional distress."   <u>See</u> <u>e.g.</u>, <u>Ingram v. JIK Realty Co.</u>, 199 Ga. App. 335, 337, 404 S.E.2d 802, 805 (1991) (citation omitted).

Here, Plaintiff's Complaint alleges sufficient facts to support a claim for intentional infliction of emotional distress against AHMSI:   AHMSI ignored Plaintiffs

"pleas" to correct her account; AHMSI repeatedly called and sent threatening letters; and AHMSI foreclosed on the Property after Plaintiff had repeatedly told AHMSI that she was not in default.  [Doc. 1, p. 15].  Plaintiff additionally alleges that such conduct has led to severe mental and emotional anxiety and stress, including her fear that AHMSI will foreclose on her other loans.  As a result, a psychologist is treating Plaintiff for this and anxiety.  The court accordingly concludes that Plaintiff has sufficiently alleged a claim of intentional infliction of emotional distress against AHMSI.  Default judgment is **GRANTED** as to this claim.

5.  <u>Conversion</u>

Plaintiff alleges that AHMSI took and converted her Mortgage payments by not applying them to her account.  Conversion is "[a]ny distinct act of dominion wrongfully asserted over another's property in denial of his right, or inconsistent with it."  <u>Md. Cas. Ins. Co. v. Welchel</u>, 257 Ga. 259, 261, 356 S.E.2d 877, 880 (1987).  In order to establish a claim of conversion, plaintiff must show "1) title to the property or right of possession, 2) actual possession in the other party, 3) demand for return of the property, and 4) refusal by the other party to return the property."  <u>Metzger v. Americredit Fin. Servs.</u>, 273 Ga. App. 453, 454, 615 S.E.2d 120, 122 (2005).  When someone comes into lawful possession of personal property, however, in the absence

of a demand for its return and a refusal to return the personal property, there is no conversion.  <u>McDaniel v. White</u>, 140 Ga. App. 118, 120, 230 S.E.2d 500, 502 (1976).  In <u>Johnson v. Citimortgage, Inc.</u>, 351 F. Supp. 2d 1368 (N.D. Ga. 2004), a sister court found that a bank's refusal to properly apply funds to a plaintiff's account, as plaintiff had "repeated[ly] requested," was evidence of conversion, even though the bank was in lawful possession of the property.  351 F. Supp. 2d at 1372.

In this case, Plaintiff has alleged that she made all of her Mortgage payments in a timely manner, and that AHMSI did not post Plaintiff's February, March, April, May, and June payments to her account.  Plaintiff, however, does not allege that she requested that AHMSI apply the funds to her account.  Because this element is necessary to establish a claim of conversion, the Court concludes that Plaintiff's conversion claim is **DENIED**.

6. <u>Failure to Exercise Due Care in Servicing Plaintiff's Loan</u>

Plaintiff next asserts that AHMSI intentionally or negligently failed to exercise due care in servicing her loan.  Under Georgia law, the failure to perform a contract does not constitute a tort, and a plaintiff has "a tort claim only where, in addition to breaching the contract, the defendant also breaches an independent duty imposed by law."  <u>ServiceMaster Co., L.P. v. Martin</u>, 252 Ga. App. 751, 754, 556 S.E.2d 517, 521

14

(2001).

Here, Plaintiff has failed to allege any negligent actions or inactions by AHMSI that fall outside of its administration of the Mortgage. The only duties that Plaintiff alleges AHMSI violated were its duties to "service her loan in a non-negligent manner and to exercise ordinary care in the servicing of her loan." [Doc. 1, p. 19]. These duties, however, do not sustain separate tort duties outside of AHMSI's administration of the Mortgage. Accordingly, the Court finds that Plaintiff has failed to sufficiently allege a claim for the intentional and negligent failure to exercise due care in servicing Plaintiff's Mortgage. Default judgment is therefore **DENIED** as to this claim.

7.  Tortious Interference with Property Rights

Plaintiff next alleges that AHMSI unlawfully interfered with "Plaintiff's enjoyment of her property or … with her rights in her property" under O.C.G.A. § 51-9-1. [Doc. 1, p. 21]. Specifically, Plaintiff alleges that AHMSI interfered with her enjoyment and rights of her property by (1) foreclosing on her property, and (2) by interfering with Plaintiff's landlord/tenant contract. Id.

Under Georgia law, any unlawful interference with a property right is a trespass. Dowdell v. Cherry, 209 Ga. 849, 849, 76 S.E.2d 499, 500 (1953). Section 51-9-1

of the O.C.G.A. states, "[t]he right of enjoyment of private property being an absolute right of every citizen, every act of another which unlawfully interferes with such enjoyment is a tort for which an action shall lie." O.C.G.A. § 51-9-1. This claim "does not have to be grounded in negligence, so long as the act causing the trespass was intended." Tacon v. Equity One, Inc., 280 Ga. App. 183, 188, 633 S.E.2d 599, 603 (2006). Additionally, a defendant must have "interfered with [a plaintiff's] possessory interests in the realty. Tower Fin. Servs., Inc. v. Mapp, 198 Ga. App. 563, 564 402 S.E.2d 286, 288 (1991) (holding that because an error in a security deed had no legal effect on plaintiff's actual title to the property, cause of action under § 51-91-1 fails).

Plaintiff's first claim of tortious interference based on AHMSI's wrongful foreclosure is sufficiently alleged. AHMSI's deliberate action to foreclose on Plaintiff's property is in accord with Georgia's interpretation of trespass. Further, Plaintiff has sufficiently alleged that the foreclosure had a legal effect on her actual title to the property. Thus, default judgment is **GRANTED** as to this claim.

Plaintiff's second claim of tortious interference, however, is not sufficiently alleged. In her Complaint, Plaintiff states that AHMSI's action "interfered with Plaintiff's contract with the tenant and the subject of the property, depriving Plaintiff of rental income." [Doc. 1, p. 21]. While Plaintiff makes references to rental income

16

throughout her Complaint, this is the first and only time Plaintiff makes any reference to an actual contract at the time of foreclosure.  Such a conclusory allegation is insufficient.  Accordingly, Plaintiff's claim for tortious interference of her property based on a contract with a tenant is not sufficiently alleged; default judgment is **DENIED** as to this claim.

8. Negligence Per Se

Plaintiff's complaint alleges four different claims of negligence per se: RESPA, defamation, tortious interference, and a common law duty not to intentionally harm Plaintiff.  For the reasons below, default judgment as to this claim is **DENIED**.

*RESPA*

Plaintiff alleges that AHMSI had a "duty under 12 U.S.C. § 2605 not to intentionally or negligently injure Plaintiff."  [Doc. 1, p. 20].  Such an allegation, however, fails to allege a claim for which relief can be granted.  See Smith v. IndyMac Fed. Bank, F.S.B., No. 1:10-cv-1348, 2010 WL 5490728, *7 (N.D. Ga. 2010) (holding that Plaintiff fails to state a claim under RESPA because plaintiff fails to identify any specific section of RESPA that was violated).  Here, Plaintiff's allegation for a cause of action, by itself, is too vague to provide the Court with any indication of what specific sections of RESPA were violated.  Thus, the Court finds that Plaintiff's negligence per

se claim under RESPA is not sufficiently alleged, and default judgment is **DENIED**.

_Defamation & Tortious Interference_

Plaintiff also claims that AHMSI "had a duty under Georgia's defamation laws not to falsely report plaintiff to the credit bureaus," and "a duty under Georgia law not to tortiously interfere with Plaintiff's property rights." [Doc. 1, p. 20]. "Before an act can be considered as negligence it must be in violation of some duty ow[ed], under the circumstances." Central Anesthesia Assocs. P.C., et al. v. Worthy, et al., 173 Ga. App. 150, 153, 325 S.E.2d 819, 823 (1984). Further, "[w]here the cited statute does not govern the relationship between the parties, no cause of action exists, and recovery for damages based on violation of that particular statute is unwarranted." Amick v. BM & KM, Inc., 275 F. Supp. 2d 1378, 1382 (N.D. Ga. 2003) (quotation omitted).

Here, Georgia law does not create either of the duties Plaintiff seeks to impose upon AHMSI. Accordingly, Plaintiff has failed to allege a negligence per se claim with regards to defamation and tortious interference, and therefore default judgment is **DENIED**.

_Common Law Duty_

Plaintiff claims that "AHMSI had a duty under common law not to intentionally harm" her. [Doc. 1, p. 20]. Disregarding Plaintiff's bare allegation,

negligence per se specifically contemplates the violation of a statute.  See Louisville & Nashville R. Co. v. Hames, 135 Ga. 67, 68 S.E. 805 (1910) (holding that Georgia law allows the adoption of a statute as a standard of conduct so that its violation becomes negligence per se).  Here, Plaintiff cannot base a negligence per se claim on a common law duty to "not intentionally harm" Plaintiff.  Accordingly, Plaintiff has failed to sufficiently allege a claim for negligence per se using the common law as a basis for her assertion.  Default judgment is therefore **DENIED**.

9. Attorney's Fees

Plaintiff alleges that she is entitled to attorney's fees and expenses under O.C.G.A. § 13-6-11, because AHMSI "acted in bad faith, has been stubbornly litigious, and has caused plaintiff unnecessary trouble and expense."  [Doc. 1, p. 21].  Under Georgia law, when a plaintiff requests attorney's fees on any one of these three grounds as asserted by Plaintiff, the award must be specifically pleaded and prayed for in the complaint.  Dept. of Transp. v. Ga. Television Co., 2000, 244 Ga. App. 750, 751, 536 S.E.2d 773, 775 (2000).  In light of the Court's above findings regarding AHMSI's admissions by default and Plaintiff's specific plea for relief, Plaintiff's claim for default judgment as to attorney's fees is **GRANTED**.

10. Punitive Damages

Under Georgia law, punitive damages may be awarded in tort actions in which it is proven by "clear and convincing evidence that the defendant's actions showed willful misconduct, malice, fraud, wantonness, oppression, or that entire want of care which would raise the presumption of a conscious indifference to consequences." O.C.G.A. § 51-12-5.1(b).

Here, Plaintiff has sufficiently alleged the following tort claims: wrongful foreclosure, defamation, intentional infliction of emotional distress, and tortious interference with property rights.  The Court further finds that these tort claims are grounded in "clear and convincing evidence" that AHMSI showed willful misconduct, malice, and/or the entire want of care which gives rise to the "presumption of a conscious indifference to consequences." <u>See</u> <u>id.</u>  Because Plaintiff's claim for punitive damages is sufficiently alleged as to those claims, default judgment is **GRANTED**.

## C. **Damages**

Although the entry of default judgment on certain claims is appropriate here, the Court still has an obligation "to assure that there is a legitimate basis for any damage award it enters."  <u>Anheuser Busch, Inc. v. Philpot</u>, 317 F.3d 1264, 1266 (11th Cir. 2003).  Under Rule 55(b), the district court "may conduct hearings…when, to enter or effectuate [a default] judgment, it needs to: … determine the amount of damages.

Fed. R. Civ. P. 55(b)(2).  The decision of whether to hold a hearing on damages rests in the district court's discretion, as indicated by the permissive nature of Rule 55(b). DIRECTV, Inc. v. Huynh, 318 F. Supp. 2d 1122, 1129 (M.D. Ala. 2004).

In her Complaint, Plaintiff requested a jury trial, seeking actual, compensatory, and punitive damages.  In the instant Motion, Plaintiff requests that this Court reserve entry of judgment on damages pending a jury trial.  Most of Plaintiff's surviving claims—wrongful foreclosure, section 2605(e) of RESPA, defamation, intentional infliction of emotional distress, tortious interference with property rights, and punitive damages—are claims in which the amount of damages is a non-liquidated sum and which cannot be easily calculated.  Moreover, the Court finds that, considering the nature of the underlying tort actions, a jury is the more appropriate body to determine Plaintiff's damages than the Court.  Accordingly, a jury will assess the amount of damages that Plaintiff is entitled.

Plaintiff is also entitled to attorney's fees and costs incurred.  Plaintiff must submit her application for attorney's fees and costs within fourteen (14) days of the date of this Order.  See Local Rule 54.1.

## CONCLUSION

In light of the uncontested allegations and exhibits submitted in Plaintiff's

Complaint, the Court concludes that Plaintiff's Motion for Default Judgment [Doc. 6] is **GRANTED in part as to liability only** and **DENIED in part**. Plaintiff's Motion for Default Judgment [Doc. 6] is **GRANTED** as to liability only for the following claims: wrongful foreclosure, violation of RESPA § 2605(e), defamation, intentional infliction of emotional distress, tortious interference with property rights due to wrongful foreclosure, and punitive damages. A jury will determine the amount of damages in all of the above claims except Plaintiff's claim for attorney's fees. The Court reserves judgment as to damages for Plaintiff's attorney's fees until it receives further evidentiary support. Plaintiff is **DIRECTED TO SUBMIT** her application for attorney's fees and costs within **fourteen (14) days** of the date of this Order. Plaintiff's Motion for Default Judgment [Doc. 6] is **DENIED** as to the following claims: violation of RESPA §2605(k), conversion, intentional and negligent failure to exercise due care in servicing Plaintiff's loan, tortious interference with Plaintiff's contractual relations with a tenant, and negligence per se.

   **SO ORDERED,** this 9th day of February, 2012.

22

<u>S/  C. Ashley Royal</u>
C. ASHLEY ROYAL
UNITED STATES DISTRICT JUDGE

LMH/ssh