**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION**

| | | |
|---|---|---|
| JANE MCGINNIS, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action |
| | ) | |
| v. | ) | Case No. 5:11-CV-284 (CAR) |
| | ) | |
| AMERICAN HOME MORTGAGE | ) | |
| SERVICING, INC., a foreign | ) | |
| corporation, | ) | |
| | ) | |
| Defendant. | ) | |

**AMENDED COMPLAINT**

COMES NOW the Plaintiff, Jane McGinnis, and amends her Complaint by substituting this Amended Complaint in the place of the original Complaint, showing as follows:

**JURISDICTION AND VENUE**

**1.**

The Plaintiff is a citizen of the state of Florida living in St. Augustine, Florida.

**2.**

American Home Mortgage Servicing, Inc., (AHMSI), is a Delaware corporation with its principle place of business in Coppell, Texas, and doing substantial business in this district and division, with its registered agent for service of process being C T Corporation System / Shakinah Edwards, 1201 Peachtree Street, N.E., Atlanta, Fulton County, Georgia 30361. AHMSI has since changed its name to Homeward Residential, Inc.

**3.**

Jurisdiction is proper under 28 USC § 1332 in that there is diversity of citizenship.

1

**4.**

Jurisdiction is also proper under 28 USC § 1331 in that one of the counts herein involves a federal question.

**5.**

Venue is proper under 28 USC § 1391(a)(2) in that a substantial part of the events or omissions giving rise to the claims herein occurred in this district.

**6.**

Venue is also proper in this district under 28 USC § 1391(b)(2) in that a substantial part of the events or omissions giving rise to the claims herein occurred in this district.

**7.**

The amount in controversy exceeds $75,000.00.

**OPERATIVE FACTS**

**8.**

On October 31, 2006, the Plaintiff executed a deed to secure debt to Taylor, Bean & Whitaker (TB&W) conveying a security interest in a home at 172 Hilton Street, Monticello, Jasper County, Georgia 31064.

**9.**

On the same date, the Plaintiff executed a promissory note to TB&W in the amount of $72,750.00 with an interest rate of 7.125% with the last payment due not later than November 1, 2036 on the property at 172 Hilton Street.

**10**.

The loan was a federally-related mortgage loan and is subject to federal law as set forth in

the Real Estate Settlement Procedures Act ("RESPA").  *See* 12 U.S.C. § 2605.

**11.**

On the same date, October 31, 2006, Plaintiff executed deeds to secure debt and promissory notes to TB&W on six other houses in Monticello, Jasper County, Georgia. These include the following properties:

Loan Number 5000168335     474 / 476 Kelly Lane

Loan Number 5000191576     111 Tucker Circle

Loan Number 5000191436     173 Lenora Drive

Loan Number 5000191543     224 Lenora Drive

Loan Number 5000191279     185 Lenora Drive

Loan Number 5000191337     1852 Persons Street

**12.**

The seven properties listed above constitute a rental business for Plaintiff and provide Plaintiff with rental income from her tenants in those properties.

**13.**

These loans on all seven of the properties (including the 172 Hilton Street property and the six properties listed in the above paragraph) are federally-related mortgage loans and are subject to federal law as set forth in the Real Estate Settlement Procedures Act ("RESPA").  *See* 12 U.S.C. § 2605.

**14**.

The factual allegations in this Complaint, and the causes of action, relate to all of the seven properties, with the sole exception being Plaintiff's claim for wrongful foreclosure, which relates only to the property located at 172 Hilton Street.

3

**15.**

Plaintiff made her first payment on these seven mortgages on December 1, 2006 and continued making timely mortgage payments to TB&W through the October 2009 payment and then continued making timely mortgage payments to AHMSI from the November 2009 payment through the June 2011 payment.  Plaintiff made all of her payments on all of the seven properties and never missed a payment.  Plaintiff has never been in default on these seven mortgage loans.

**16.**

Plaintiff timely made the mortgage payment on the 172 Hilton Street property loan (loan number 5000191477) and on loan numbers 5000168335, 5000191576, 5000191436, 5000191543, 5000191279, 5000191337 to TB&W in December, 2006.

**17.**

Plaintiff timely made the mortgage payment on the 172 Hilton Street property loan and on loan numbers 5000168335, 5000191576, 5000191436, 5000191543, 5000191279, 5000191337 to TB&W in January, 2007.

**18.**

Plaintiff timely made the mortgage payment on the 172 Hilton Street property loan and on loan numbers 5000168335, 5000191576, 5000191436, 5000191543, 5000191279, 5000191337 to TB&W in February, 2007.

**19.**

Plaintiff timely made the mortgage payment on the 172 Hilton Street property loan and on loan numbers 5000168335, 5000191576, 5000191436, 5000191543, 5000191279, 5000191337 to TB&W in March, 2007.

**20.**

Plaintiff timely made the mortgage payment on the 172 Hilton Street property loan and on loan numbers 5000168335, 5000191576, 5000191436, 5000191543, 5000191279, 5000191337 to TB&W in April, 2007.

**21.**

Plaintiff timely made the mortgage payment on the 172 Hilton Street property loan and on loan numbers 5000168335, 5000191576, 5000191436, 5000191543, 5000191279, 5000191337 to TB&W in May, 2007.

**22.**

Plaintiff timely made the mortgage payment on the 172 Hilton Street property loan and on loan numbers 5000168335, 5000191576, 5000191436, 5000191543, 5000191279, 5000191337 to TB&W in June, 2007.

**23.**

Plaintiff timely made the mortgage payment on the 172 Hilton Street property loan and on loan numbers 5000168335, 5000191576, 5000191436, 5000191543, 5000191279, 5000191337 to TB&W in July, 2007.

**24.**

Plaintiff timely made the mortgage payment on the 172 Hilton Street property loan and on loan numbers 5000168335, 5000191576, 5000191436, 5000191543, 5000191279, 5000191337 to TB&W in August, 2007.

**25.**

Plaintiff timely made the mortgage payment on the 172 Hilton Street property loan and on

loan numbers 5000168335, 5000191576, 5000191436, 5000191543, 5000191279, 5000191337 to TB&W in September, 2007.

**26.**

Plaintiff timely made the mortgage payment on the 172 Hilton Street property loan and on loan numbers 5000168335, 5000191576, 5000191436, 5000191543, 5000191279, 5000191337 to TB&W in October, 2007.

**27.**

Plaintiff timely made the mortgage payment on the 172 Hilton Street property loan and on loan numbers 5000168335, 5000191576, 5000191436, 5000191543, 5000191279, 5000191337 to TB&W in November, 2007.

**28.**

Plaintiff timely made the mortgage payment on the 172 Hilton Street property loan and on loan numbers 5000168335, 5000191576, 5000191436, 5000191543, 5000191279, 5000191337 to TB&W in December, 2007.

**29.**

Plaintiff timely made the mortgage payment on the 172 Hilton Street property loan and on loan numbers 5000168335, 5000191576, 5000191436, 5000191543, 5000191279, 5000191337 to TB&W in January, 2008.

**30.**

Plaintiff timely made the mortgage payment on the 172 Hilton Street property loan and on loan numbers 5000168335, 5000191576, 5000191436, 5000191543, 5000191279, 5000191337 to TB&W in February, 2008.

**31.**

Plaintiff timely made the mortgage payment on the 172 Hilton Street property loan and on loan numbers 5000168335, 5000191576, 5000191436, 5000191543, 5000191279, 5000191337 to TB&W in March, 2008.

**32.**

Plaintiff timely made the mortgage payment on the 172 Hilton Street property loan and on loan numbers 5000168335, 5000191576, 5000191436, 5000191543, 5000191279, 5000191337 to TB&W in April, 2008.

**33.**

Plaintiff timely made the mortgage payment on the 172 Hilton Street property loan and on loan numbers 5000168335, 5000191576, 5000191436, 5000191543, 5000191279, 5000191337 to TB&W in May, 2008.

**34.**

Plaintiff timely made the mortgage payment on the 172 Hilton Street property loan and on loan numbers 5000168335, 5000191576, 5000191436, 5000191543, 5000191279, 5000191337 to TB&W in June, 2008.

**35.**

Plaintiff timely made the mortgage payment on the 172 Hilton Street property loan and on loan numbers 5000168335, 5000191576, 5000191436, 5000191543, 5000191279, 5000191337 to TB&W in July, 2008.

**36.**

Plaintiff timely made the mortgage payment on the 172 Hilton Street property loan and on

loan numbers 5000168335, 5000191576, 5000191436, 5000191543, 5000191279, 5000191337 to TB&W in August, 2008.

**37.**

Plaintiff timely made the mortgage payment on the 172 Hilton Street property loan and on loan numbers 5000168335, 5000191576, 5000191436, 5000191543, 5000191279, 5000191337 to TB&W in September, 2008.

**38.**

Plaintiff timely made the mortgage payment on the 172 Hilton Street property loan and on loan numbers 5000168335, 5000191576, 5000191436, 5000191543, 5000191279, 5000191337 to TB&W in October, 2008.

**39.**

Plaintiff timely made the mortgage payment on the 172 Hilton Street property loan and on loan numbers 5000168335, 5000191576, 5000191436, 5000191543, 5000191279, 5000191337 to TB&W in November, 2008.

**40.**

Plaintiff timely made the mortgage payment on the 172 Hilton Street property loan and on loan numbers 5000168335, 5000191576, 5000191436, 5000191543, 5000191279, 5000191337 to TB&W in December, 2008.

**41.**

Plaintiff timely made the mortgage payment on the 172 Hilton Street property loan and on loan numbers 5000168335, 5000191576, 5000191436, 5000191543, 5000191279, 5000191337 to TB&W in January, 2009.

**42.**

Plaintiff timely made the mortgage payment on the 172 Hilton Street property loan and on loan numbers 5000168335, 5000191576, 5000191436, 5000191543, 5000191279, 5000191337 to TB&W in February, 2009.

**43.**

Plaintiff timely made the mortgage payment on the 172 Hilton Street property loan and on loan numbers 5000168335, 5000191576, 5000191436, 5000191543, 5000191279, 5000191337 to TB&W in March, 2009.

**44.**

Plaintiff timely made the mortgage payment on the 172 Hilton Street property loan and on loan numbers 5000168335, 5000191576, 5000191436, 5000191543, 5000191279, 5000191337 to TB&W in April, 2009.

**45.**

Plaintiff timely made the mortgage payment on the 172 Hilton Street property loan and on loan numbers 5000168335, 5000191576, 5000191436, 5000191543, 5000191279, 5000191337 to TB&W in May, 2009.

**46.**

Plaintiff timely made the mortgage payment on the 172 Hilton Street property loan and on loan numbers 5000168335, 5000191576, 5000191436, 5000191543, 5000191279, 5000191337 to TB&W in June, 2009.

**47.**

Plaintiff timely made the mortgage payment on the 172 Hilton Street property loan and on

loan numbers 5000168335, 5000191576, 5000191436, 5000191543, 5000191279, 5000191337 to TB&W in July, 2009.

**48.**

Plaintiff timely made the mortgage payment on the 172 Hilton Street property loan and on loan numbers 5000168335, 5000191576, 5000191436, 5000191543, 5000191279, 5000191337 to TB&W in August, 2009.

**49.**

Plaintiff timely made the mortgage payment on the 172 Hilton Street property loan and on loan numbers 5000168335, 5000191576, 5000191436, 5000191543, 5000191279, 5000191337 to TB&W in September, 2009.

**50.**

Plaintiff timely made the mortgage payment on the 172 Hilton Street property loan and on loan numbers 5000168335, 5000191576, 5000191436, 5000191543, 5000191279, 5000191337 to TB&W in October, 2009.

**51.**

Plaintiff timely made the mortgage payment on the 172 Hilton Street property loan and on loan numbers 5000168335, 5000191576, 5000191436, 5000191543, 5000191279, 5000191337 to AHMSI in November, 2009.

**52.**

Plaintiff timely made the mortgage payment on the 172 Hilton Street property loan and on loan numbers 5000168335, 5000191576, 5000191436, 5000191543, 5000191279, 5000191337 to AHMSI in December, 2009.

**53.**

Plaintiff timely made the mortgage payment on the 172 Hilton Street property loan and on loan numbers 5000168335, 5000191576, 5000191436, 5000191543, 5000191279, 5000191337 to AHMSI in January, 2010.

**54.**

Plaintiff timely made the mortgage payment on the 172 Hilton Street property loan and on loan numbers 5000168335, 5000191576, 5000191436, 5000191543, 5000191279, 5000191337 to AHMSI in February, 2010.

**55.**

Plaintiff timely made the mortgage payment on the 172 Hilton Street property loan and on loan numbers 5000168335, 5000191576, 5000191436, 5000191543, 5000191279, 5000191337 to AHMSI in March, 2010.

**56.**

Plaintiff timely made the mortgage payment on the 172 Hilton Street property loan and on loan numbers 5000168335, 5000191576, 5000191436, 5000191543, 5000191279, 5000191337 to AHMSI in April, 2010.

**57.**

Plaintiff timely made the mortgage payment on the 172 Hilton Street property loan and on loan numbers 5000168335, 5000191576, 5000191436, 5000191543, 5000191279, 5000191337 to AHMSI in May, 2010.

**58.**

Plaintiff timely made the mortgage payment on the 172 Hilton Street property loan and on

loan numbers 5000168335, 5000191576, 5000191436, 5000191543, 5000191279, 5000191337 to AHMSI in June, 2010.

**59.**

Plaintiff timely made the mortgage payment on the 172 Hilton Street property loan and on loan numbers 5000168335, 5000191576, 5000191436, 5000191543, 5000191279, 5000191337 to AHMSI in July, 2010.

**60.**

Plaintiff timely made the mortgage payment on the 172 Hilton Street property loan and on loan numbers 5000168335, 5000191576, 5000191436, 5000191543, 5000191279, 5000191337 to AHMSI in August, 2010.

**61.**

Plaintiff timely made the mortgage payment on the 172 Hilton Street property loan and on loan numbers 5000168335, 5000191576, 5000191436, 5000191543, 5000191279, 5000191337 to AHMSI in September, 2010.

**62.**

Plaintiff timely made the mortgage payment on the 172 Hilton Street property loan and on loan numbers 5000168335, 5000191576, 5000191436, 5000191543, 5000191279, 5000191337 to AHMSI in October, 2010.

**63.**

Plaintiff timely made the mortgage payment on the 172 Hilton Street property loan and on loan numbers 5000168335, 5000191576, 5000191436, 5000191543, 5000191279, 5000191337 to AHMSI in November, 2010.

**64.**

Plaintiff timely made the mortgage payment on the 172 Hilton Street property loan and on loan numbers 5000168335, 5000191576, 5000191436, 5000191543, 5000191279, 5000191337 to AHMSI in December, 2010.

**65.**

Plaintiff timely made the mortgage payment on the 172 Hilton Street property loan and on loan numbers 5000168335, 5000191576, 5000191436, 5000191543, 5000191279, 5000191337 to AHMSI in January, 2011.

**66.**

Plaintiff timely made the mortgage payment on the 172 Hilton Street property loan and on loan numbers 5000168335, 5000191576, 5000191436, 5000191543, 5000191279, 5000191337 to AHMSI in February, 2011.

**67.**

Plaintiff timely made the mortgage payment on the 172 Hilton Street property loan and on loan numbers 5000168335, 5000191576, 5000191436, 5000191543, 5000191279, 5000191337 to AHMSI in March, 2011.

**68.**

Plaintiff timely made the mortgage payment on the 172 Hilton Street property loan and on loan numbers 5000168335, 5000191576, 5000191436, 5000191543, 5000191279, 5000191337 to AHMSI in April, 2011.

**69.**

Plaintiff timely made the mortgage payment on the 172 Hilton Street property loan and on

loan numbers 5000168335, 5000191576, 5000191436, 5000191543, 5000191279, 5000191337 to AHMSI in May, 2011.

**70.**

Plaintiff timely made the mortgage payment on the 172 Hilton Street property loan and on loan numbers 5000168335, 5000191576, 5000191436, 5000191543, 5000191279, 5000191337 to AHMSI in June, 2011.

**71.**

On October 27, 2009, Plaintiff was notified by AHMSI that the servicing of her loans was being transferred from TB&W to AHMSI effective October 17, 2009.  Attached as Exhibit 1 is a copy of that letter.

**72.**

Beginning with the November 2009 payment, Plaintiff began making her payments to AHMSI and continued to timely make her payments each month to AHMSI until February 2011 when AHMSI began returning her checks saying that she was in default on her loans when she was absolutely not in default on her loans.

**73.**

Shortly after AHMSI took over the servicing of Plaintiff's loans from TB&W, AHMSI began contacting Plaintiff through letters and telephone calls stating that she was in default on her loans and that she had not made certain payments to TB&W in the last few months before the transfer of servicing to AHMSI.

**74.**

On December 7, 2009, Plaintiff's son, Adam McGinnis, on behalf of Plaintiff and with

14

Plaintiff's authority, faxed to AHMSI proof that the loan payments to TB&W had been made in a timely manner.

**75.**

Attached as Exhibit 2 is a copy of the letter faxed to AHMSI with copies of the checks to TB&W on the 172 Hilton Street property.  (Copies of the checks on the other properties are not attached but were made also.)

**76.**

Despite Plaintiff's submission of proof of payments to TB&W, AHMSI continued with threatening letters and harassing phone calls to Plaintiff claiming that all seven (7) loans were in default and threatening foreclosure of Plaintiff's properties.

**77.**

Attached as Exhibit 3 is an example of the many, many letters AHMSI sent Plaintiff stating that she was in arrears and threatening foreclosure.  This particular letter is dated January 21, 2010.

**78.**

Attached as Exhibit 4 is the cover sheet of another facsimile Adam McGinnis sent to AHMSI with attachments showing that Plaintiff was not in arrears on her loans.

**79.**

In response, AHMSI sent a letter to Plaintiff, dated June 20, 2010, stating that she was in arrears.  Attached as Exhibit 5 is a copy of that letter.

**80.**

Attached as Exhibit 6 are some of the collection letters received by Plaintiff from the collection agency employed by AHMSI to contact Plaintiff.  Plaintiff received numerous similar letters on all of the loans.

**81.**

Enclosed as Exhibit 7 are more facsimiles Adam McGinnis, on behalf of Plaintiff, sent to AHMSI trying to resolve AHMSI's errors on Plaintiff's account.

**82.**

Plaintiff's February 2011 payment check for the loan on 172 Hilton Street in Monticello, loan No. 5000191477, was cashed by AHMSI, and AHMSI returned the payment with AHMSI's check and a letter dated March 2, 2011.  That letter is attached as Exhibit 8.

**83.**

Also on March 2, 2011, at Exhibit 9, AHMSI wrote Plaintiff saying AHMSI was placing Plaintiff's loan on 172 Hilton Street in Monticello into foreclosure.

**84.**

Plaintiff's March payment on this loan was also returned by AHMSI by letter dated March 15, 2011.  Exhibit 10.

**85.**

On March 22, 2011, Plaintiff received notices of foreclosure from McCurdy &  Candler, lawyers for AHMSI.  Attached hereto as Exhibit 11.

**86.**

Plaintiff's son, Adam McGinnis, on behalf of Plaintiff, contacted the lawyers at McCurdy & Candler and tried to explain to them that Plaintiff had timely made all payments on this and all the other six loans AHMSI was servicing and that Plaintiff was never late on her loan payments.

**87.**

The April 2011 payment was also returned by AHMSI by letter dated April 13, 2011, attached as Exhibit 12.

**88.**

In April of 2011, Adam McGinnis sent proof of payment on all the loans to McCurdy & Candler, AHMSI's lawyers.

**89.**

Attached as Exhibit 13 is an April 2011 e-mail chain from Adam McGinnis trying to explain to AHMSI's lawyers that Plaintiff was not delinquent.

**90.**

Instead of resolving AHMSI's errors on Plaintiff's account, AHMSI's lawyers sent more letters to Plaintiff on May 6, 2011, advising of foreclosure on the subject property.  Attached as Exhibit 14.

**91.**

On May 11, 2011, AHMSI returned Plaintiff's May 2011 payment.  Attached as Exhibit 15.

**92**.

During the months of April, 2011 and May, 2011, AHMSI ran a notice of foreclosure on Plaintiff in The Monticello News newspaper, publishing false and derogatory information about Plaintiff.  Attached as Exhibit 16.

**93.**

Despite the fact that Plaintiff was current on her loan, on June 7, 2011, AHMSI foreclosed on Plaintiff's property at 172 Hilton Street, Monticello, Georgia at the Jasper County Courthouse, and sold Plaintiff's property back to the lender for the ridiculously low sum of $25,000.00 at the foreclosure sale.  Attached as Exhibit 17.

**94.**

AHMSI falsely reported the Plaintiff to be in default on her mortgages to the credit reporting bureaus.

**95.**

AHMSI has acted with malice and with knowledge that the information it reported to the credit bureaus about Plaintiff was false or with reckless disregard of whether it was false or not.

**96.**

On June 12, 2012, Plaintiff, through her agent Adam McGinnis, wrote to Defendant (now known as Homeward Residential), concerning the seven loans Plaintiff had with Defendant. (Exhibit 18 hereto) and requesting information about the servicing of these loans.

**97.**

The seven loans referenced in Exhibit 18 are federally related mortgage loans subject to federal law as set forth in the Real Estate Settlement Procedures Act ("RESPA").  *See* 12 U.S.C. § 2605.

**98.**

On July 16, 2012, Defendant sent a response to Plaintiff's June 12, 2012 letter.  The response was not adequate under RESPA.  *See* 12 U.S.C. § 2605(e).  (Exhibit 19 hereto).

**99.**

All of Adam McGinnis' correspondence on behalf of Plaintiff with AHMSI are "qualified written requests" under RESPA.

**100.**

AHMSI did not make, and Plaintiff did not receive, proper or timely responses to

Plaintiff's numerous qualified written requests as required by RESPA.  *See* 12 U.S.C. § 2605(e).

**101.**

Plaintiff has suffered a great deal of severe and extreme mental and emotional stress from her ordeal with AHMSI and is being treated by a psychologist in an effort to ease her emotional and mental stress and worry.

**102.**

Plaintiff has suffered damage to her credit reputation as a result of AHMSI's actions and misconduct.

**103.**

Plaintiff has suffered pecuniary loss as a result of AHMSI's actions and misconduct.

**104.**

Plaintiff has suffered the loss of rental income as a direct result of AHMSI's actions and misconduct.

**105.**

Plaintiff has suffered emotionally, physically and financially from this entire ordeal as a result of AHMSI's actions and misconduct.

**106.**

Plaintiff is fearful that AHMSI will start foreclosing on her other loans which it is servicing even though Plaintiff is **NOT** in default on any of those loans either.

**107**.

Adam McGinnis has made numerous phone calls to AHMSI on Plaintiff's behalf asking AHMSI to correct AHMSI's errors in Plaintiff's account and demanding that AHMSI apply

Plaintiff's payments to her account and demanding that all unauthorized fees and charges be taken off her account and refunded — all to no avail.

**108.**

AHMSI willfully, intentionally, and knowingly ignored and disregarded Plaintiff's rights when specifically put on notice that AHMSI was wrong about Plaintiff's account being in default when Plaintiff was not in default on her loans.

**COUNT ONE**

**WRONGFUL FORECLOSURE**

**109**.

Plaintiff incorporates paragraphs 1 through 108 herein.

**110.**

AHMSI foreclosed on Plaintiff's property at 172 Hilton Street when it had no right to do so as Plaintiff was not in default on her loan when AHMSI foreclosed.

**111.**

AHMSI has committed the tort of wrongful foreclosure and has exercised the power of sale maliciously and in bad faith.

**112.**

AHMSI's wrongful foreclosure of Plaintiff's property at 172 Hilton Street has caused Plaintiff severe emotional, physical and financial damage.

**COUNT TWO**

**RESPA VIOLATIONS**

**113.**

Plaintiff incorporates paragraphs 1 through 112 herein.

**114.**

AHMSI has failed to comply with 12 U.S.C. § 2605(e) in that it failed to properly respond to numerous qualified written requests and it reported adverse credit information about Plaintiff to the credit bureaus in violation of RESPA.

**115.**

AHMSI failed to make timely and appropriate corrections to Plaintiff's account in violation of RESPA.  12 U.S.C. § 2605.

**116.**

AHMSI violated 12 U.S.C. § 2605(e) in that it did not take timely action to respond to Plaintiff's pleas to correct her account, refused to properly investigate its errors, failed to correct false reporting to the credit bureaus and failed to follow standard servicer's duties and standards of care.

**117.**

AHMSI has violated 12 U.S.C. § 2605(e) and/or 2605(k) as Defendant did not take timely action to respond to Plaintiff's requests to correct her seven loans, refused to properly investigate its errors on her seven loans, and failed to correct false reporting to the credit bureaus and failed to follow standard servicer's duties and standards of care.  Plaintiff has continued to make qualified written requests that Defendant investigate and correct its errors on her accounts.  (See Exhibit 18 hereto).  Defendant has failed and refused to meet its duties to Plaintiff under 12 U.S.C. § 2605(e) and/or 2605(k), which has caused actual damages to Plaintiff.

**118.**

AHMSI's violations of RESPA proximately caused actual damages to Plaintiff.  As a direct result of AHMSI's violations of RESPA, Plaintiff has suffered severe and extreme mental and emotional stress as well as physical distress, she has suffered damage to her credit reputation,

she has suffered pecuniary loss, and she has suffered the loss of rental income.

**119.**

Because of these and other violations of RESPA, AHMSI is liable for all actual damages

to plaintiff, including but not limited to emotional damages.

**COUNT THREE**

**INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS**

**120**.

Plaintiff incorporates paragraphs 1 through 119 herein.

**121.**

AHMSI has committed the tort of intentional infliction of emotional distress causing

severe emotional damage to Plaintiff.

**122.**

AHMSI's actions in flagrantly and intentionally ignoring Plaintiff's numerous  pleas over

the years to correct her account and her loans and instead repeatedly calling her with harassing

phone calls and sending her numerous threatening letters and refusing to correct the false

reporting to the credit bureaus is atrocious and utterly intolerable in today's civilized society.

**123.**

AHMSI's actions in foreclosing on Plaintiff's property when AHMSI was on direct and

repeated notice that Plaintiff was not in default or arrears on her loan is atrocious behavior and is

utterly intolerable in a civilized society.

**124.**

AHMSI's outrageous and extreme conduct has caused severe and extreme emotional and

physical distress to Plaintiff which no one should have to endure.

## COUNT FOUR

## CONVERSION

### 125.

Plaintiff incorporates paragraphs 1 through 124 herein.

### 126.

Plaintiff made all of her mortgage payments in a timely manner on her account.

### 127.

AHMSI did not give Plaintiff proper credit for all of her payments made by Plaintiff on her mortgage account for her loans.

### 128.

AHMSI has charged and in many cases has collected from Plaintiff fees to which it was not entitled to charge (i.e., late fees, property inspection fees, and attorney fees).

### 129.

Plaintiff demanded of AHMSI numerous times that AHMSI return and apply all of her payments to her mortgage account and straighten Plaintiff's account out to reflect that Plaintiff had made all of her payments on her loans.  Plaintiff has also demanded of AHMSI numerous times that it take off her account and refund all the numerous unauthorized fees which it has charged to her.  Plaintiff has provided proof of payments and explained to AHMSI over and over that Plaintiff was current on her account, and demanded that AHMSI return and apply her payments to correct her account to show that her payments had been timely made and to toke off all the unauthorized fees charged to her.

**130.**

AHMSI refused to return and apply all of the payments that Plaintiff had made on her mortgage loans to her account.  AHMSI has refused to take off all the unauthorized fees it has charged to her account and has refused to refund the unauthorized fees it has collected from Plaintiff.

**131.**

AHMSI has committed the tort of conversion by taking and converting the payments made by Plaintiff on her loans and not applying them to Plaintiff's account despite numerous demands by Plaintiff to do so.  AHMSI has also committed the tort of conversion by assessing fees to Plaintiff's account which it is not authorized to do and collecting fees it is not authorized to collect.  (*See Johnson v. CitiMortgage*, 352 F. Supp 2d 368 (N.D. Ga. 2004)).

**132.**

AHMSI's conversion of Plaintiff's property has caused damage to Plaintiff.

## COUNT FIVE

## TORTIOUS INTERFERENCE WITH PROPERTY RIGHTS

**133**.

Plaintiff incorporates paragraphs 1 through 132 herein.

**134.**

AHMSI had a duty under Georgia law not to unlawfully interfere with Plaintiff's enjoyment of her property or to interfere with her rights in her property.  O.C.G.A. § 51-9-1.

**135.**

By declaring Plaintiff to be in default on her loan for the property at 172 Hilton Street

when AHMSI was on notice that she was not, in fact, in default on her loan, and then foreclosing on Plaintiff's property despite that notice, AHMSI intentionally and unlawfully interfered with Plaintiff's enjoyment of her property.

**136.**

Prior to Defendant's foreclosure of her property at 172 Hilton Street, Plaintiff had had a rental contract with a tenant living in Plaintiff's property at 172 Hilton Street, Monticello, Georgia. Defendant was aware of the rental contract prior to the foreclosure and even had a copy of the rental agreement in its files.  Under the rental agreement, the tenant paid a rental fee of $700.00 per month to rent Plaintiff's property at 172 Hilton Street, Monticello, Georgia. (Exhibit 20 hereto).

**137.**

AHMSI's actions of foreclosing on Plaintiff's property at 172 Hilton Street when AHMSI had no right to do so interfered with Plaintiff's contract with the tenant of the subject property, depriving Plaintiff of rental income.

**138.**

AHMSI's unlawful interference with Plaintiff's enjoyment and use of her property caused damage to Plaintiff.

**139.**

Additionally, AHMSI is also threatening foreclosure on the other six properties owned by Plaintiff (listed above in Paragraph 11), and is claiming that Plaintiff is in default on those six loans when she is not in default on those loans.

**140.**

25

Plaintiff has rental agreements with tenants living in all six of those properties.

**141.**

AHMSI's continued and ongoing threats to foreclose on Plaintiff's other six properties when it has no right to do so constitutes unlawful interference with Plaintiff's enjoyment and use of her properties.  AHMSI's continued and ongoing threats to foreclose on Plaintiff's other six properties threatens to deprive Plaintiff of rental income from the rental contracts she has with the tenants of those properties.

**142**.

AHMSI's unlawful interference with Plaintiff's enjoyment and use of her properties has caused damage to Plaintiff.

## COUNT SIX

## DEFAMATION

**143.**

Plaintiff incorporates paragraphs 1 through 142 herein.

**144.**

The seven properties listed in paragraphs 8 through 11 hereto constitute a rental business for Plaintiff and provide Plaintiff with rental income from her tenants in those properties.

**145.**

AHMSI is liable for its intentional and malicious defamation of Plaintiff and her business through reporting false information about her and her rental properties to the credit bureaus.

**146.**

AHMSI is liable for its intentional and malicious defamation of Plaintiff and her business

through publishing false information about her and her rental properties in the newspaper.

**147.**

AHMSI's defamation of Plaintiff and her business has caused her severe physical, emotional and financial damage including, but not limited to, mental and emotional stress, damage to her reputation, and pecuniary loss, including loss of rental income.

## COUNT SEVEN

## GEORGIA RICO

**148.**

Plaintiff incorporates paragraphs 1 through 147 herein.

**149.**

Plaintiff incorporates paragraphs 1 through 140 herein.

**150.**

Defendant's conduct as set out above constitutes violations of O.C.G.A. § 16-14-1 *et seq.* (hereinafter "Georgia RICO").

**151.**

Plaintiff is a "person" within the meaning of the Georgia RICO statute.

**152.**

Defendant is a "person" within the meaning of the Georgia RICO statute.

**153.**

Defendant is an "enterprise" within the meaning of the Georgia RICO statute.

**154.**

AHMSI, through a pattern of racketeering or proceeds derived therefrom, has acquired and maintained both an interest in and control of an enterprise and real and personal property – money – in violation of O.C.G.A. § 16-4-4(a).

**155.**

AHMSI was associated with an enterprise and conducted and participated in the enterprise through a pattern of racketeering activity in violation of O.C.G.A. § 16-4-4(b).

**156.**

The enterprise is composed of AHMSI, and/or the foreclosure lawyers of McCurdy & Candler.

**157.**

AHMSI conspired to violate both O.C.G.A. § 16-4-4(a) and O.C.G.A. § 16-4-4(b).

**158.**

In furtherance of its enterprise or enterprises, Defendant, separately and/or in concert with its officers, directors, agents, employees, subsidiaries, and parent companies, engaged in prohibited and unlawful activity, or endeavored or conspired to engage in prohibited and unlawful activity on two or more occasions.  These unlawful acts include, but are not limited to:

    a.     Unlawfully taking and appropriating Plaintiff's money and property in violation of O.C.G.A. § 16-8-2 (theft by taking).

    b.     Unlawfully converting Plaintiff's money and property in violation of O.C.G.A. § 16-8-4 (theft by conversion).

    c.     Unlawfully obtaining Plaintiff's money and property by deceitful means and artful practices with the intent to deprive them of their property in violation of O.C.G.A. §

28

16-8-3 (theft by deception).

d.      Unlawfully sending, causing to be sent and receiving letters, checks, and other papers and items, including mortgage account statements and collection letters sent through the U.S. Postal Service, for the purpose of executing and attempting to execute Defendant's fraudulent scheme in violation of 18 U.S.C. § 1341.

e.      Unlawfully causing to be sent and receiving writings (letters and statements) and sound communications (including but not limited to telephone calls) for the purpose of executing and attempting to execute Defendant's fraudulent scheme in violation of 18 U.S.C. § 1343.

f.      Sending deceptive commercial electronic mail in violation of O.C.G.A. § 16-9-101.

**159.**

Defendant committed the crime of theft by taking (O.C.G.A. § 16-8-2) on two or more occasions since October, 2009 by charging Plaintiff late fees and other unauthorized fees on her mortgage loans that she did not owe, and by unlawfully appropriating these fees from Plaintiff's mortgage payments when she did not owe these fees. Defendant also unlawfully appropriated fees from the wrongful foreclosure of Plaintiff's property at 172 Hilton Street.  Defendant took Plaintiff's money with the intent of depriving Plaintiff of her money and/or property and with the intent of not giving Plaintiff credit for her mortgage loan payments. Plaintiff suffered pecuniary harm from Defendant's theft of her property.

**160.**

Defendant committed the crime of theft by conversion (O.C.G.A. § 16-8-4) on two or

more occasions since October, 2009 by failing and refusing to apply Plaintiff's mortgage

payments to her mortgage loan accounts after Plaintiff demanded on numerous occasions, both

verbally and in writing, that Defendant apply the payments that she had made to her mortgage

accounts.  Defendant also committed the crime of theft by conversion on two or more occasions

since October, 2009 by improperly applying Plaintiff's mortgage loan payments to late fees and

other unauthorized fees and charges that Plaintiff did not owe, and by failing and refusing to

apply and credit those improperly taken fees back to Plaintiff's mortgage account after Plaintiff

demanded, on numerous occasions, both verbally and in writing, that Defendant return and apply

the improperly taken fees to her mortgage loan accounts.  Defendant also unlawfully appropriated

fees from the wrongful foreclosure of Plaintiff's property at 172 Hilton Street.  Defendant took

Plaintiff's money with the intent of depriving Plaintiff of her money and/or property and with the

intent of not giving Plaintiff credit for her mortgage loan payments.  Plaintiff suffered pecuniary

harm from Defendant's theft of her property.

**161.**

Defendant committed the crime of theft by deception (O.C.G.A. § 16-8-3) on two or more

occasions since October, 2009 by falsely representing to Plaintiff that she owed late and other

unauthorized fees and charges on her mortgage loan accounts that she did not owe, and by falsely

representing to Plaintiff that she owed a higher balance on her mortgage loan accounts than she

owed.  Defendant knew these representations to be false, yet unlawfully appropriated Plaintiff's

property and money with the intent to deprive Plaintiff of her money by taking the improper fees

and charges from Plaintiff's mortgage payments instead of properly applying Plaintiff's payments

to her mortgage loan accounts.  Defendant took Plaintiff's money with the intent of depriving

Plaintiff of her money and/or property and with the intent of not giving Plaintiff credit for her mortgage loan payments.  Plaintiff suffered pecuniary harm from Defendant's theft of her property.

**162.**

Defendant violated 18 U.S.C. § 1341 (mail fraud) by its multiple and continuous use of the U.S. mail in furtherance of its fraudulent scheme, including the sending of loan-related documents by and between AHMSI, the foreclosure law firm of McCurdy &  Candler, and Plaintiff.

**163.**

Defendant violated 18 U.S.C. § 1343 (wire fraud) by its multiple and continuous use of the U.S. wires in furtherance of its fraudulent scheme, including the sending of loan-related documents by and between AHMSI, the foreclosure law firm of McCurdy &  Candler, and Plaintiff.

**164.**

Defendant and its employees and agents used the U.S. mail and wires to continuously send letters and make telephone calls to Plaintiff to falsely represent to Plaintiff the status of her mortgage loan accounts, to falsely represent to Plaintiff that she was in default on her loans, and to falsely represent to Plaintiff that she owed late fees and other unauthorized charges, in an effort to deceive Plaintiff into paying more to Defendant than she owed on her accounts.  Defendant used the U.S. mail to send account statements to Plaintiff showing that it had appropriated Plaintiff's payments toward fees and charges that she did not owe, and falsely representing that it had a right to appropriate Plaintiff's payments in that manner.

**165.**

31

Each use by AHMSI and/or the foreclosure attorneys at McCurdy & Candler of the mail to send a mortgage account statement or letter concerning Plaintiff's mortgage accounts or of the mail, wire or email to send loan related documents and information, violates 18 U.S.C. § 1341 and/or § 1343 because AHMSI and the foreclosure attorneys knowingly participated in the scheme to fraudulently charge Plaintiff illegal and unauthorized charges, and used those mailings and wires to further their interests in the scheme.

**166.**

Each act Defendant engaged in constitutes a separate incident of "racketeering activity" within the meaning of the Georgia RICO statute.  The multiple acts of racketeering activity were interrelated, were part of a common and continuous pattern of fraudulent acts and schemes, were perpetrated for the same or similar purposes, and were not a series of disconnected, isolated, or sporadic acts.  They were part of a regular and routine way in which Defendant conducted its business.  The multiple acts constitute a pattern of racketeering activity.  Defendant intended to defraud Plaintiff with regard to her mortgages secured by real property as set out herein.

**167.**

Defendant engaged in the racketeering activity with the intent, motive, and/or effect of deriving pecuniary gain.  Defendant targeted Plaintiff in furtherance of its scheme to defraud.

**168.**

Defendant, through its pattern of racketeering activity, directly and/or indirectly acquired property and money of Plaintiff.

**169.**

The members of the enterprise share the common goal of deriving pecuniary gain and

increasing their own revenues and profit as a proximate result of AHMSI charging and appropriating illegal and unauthorized fees in connection with mortgage loans.

**170.**

Defendant's officers, directors, agents, and employees directly and/or indirectly participated in the enterprises through a pattern of racketeering activity.

**171.**

Defendant's wrongful acts alleged herein proximately and directly caused damage to Plaintiff.  Plaintiff's injuries flow directly from the predicate offenses set out herein.

**172.**

Plaintiff seeks to recover all damages allowable as a result of such violations, to include actual damages, treble damages, punitive damages, interest, and attorney fees.

## COUNT EIGHT

## ATTORNEYS' FEES AND EXPENSES

**173.**

Plaintiff incorporates paragraphs 1 through 172 herein.

**174.**

AHMSI has acted in bad faith, has been stubbornly litigious, and has caused plaintiff unnecessary trouble and expense, entitling Plaintiff to recover attorney's fees and expenses under O.C.G.A. § 13-6-11.

## COUNT NINE

## PUNITIVE DAMAGES

**175.**

Plaintiff incorporates paragraphs 1 through 174 herein.

**176.**

AHMSI is liable under O.C.G.A. § 51-12-5.1 for punitive damages for its willful, malicious, and reckless conduct and for its specific intent to cause harm to Plaintiff.

WHEREFORE Plaintiff prays that she recover the following:

(1)     Actual damages;

(2)     Emotional damages;

(3)     General damages;

(4)     Treble damages;

(5)     Damages to credit reputation;

(6)     Expenses of litigation, including attorney's fees;

(7)     Punitive damages;

(8)     Such other damages as are appropriate in this case;

(9)     Trial by Jury.

This 3rd day of August, 2012.

Respectfully Submitted,

CHARLES A. GOWER, P.C.

*/s/ Charles A. Gower*____
CHARLES A. GOWER
Georgia Bar No.: 303500
TERESA T. ABELL
Georgia Bar No.: 000383
MIRANDA J. BRASH

Georgia Bar No.: 475203

1425 Wynnton Road
Post Office Box 5509
Columbus, Georgia 31906
Tel: (706) 324-5685
Fax: (706) 322-2964
*Attorneys for Plaintiff*

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that I have this date electronically filed the above with the Clerk of Court using the CM/ECF system which will automatically send e-mail notification of such filing to the following attorneys of record:

Russell J. Rogers
Cristine L. Patterson
Thompson Hine LLP
Two Alliance Center
3560 Lenox Road, Suite 1600
Atlanta, GA 30326

This 3rd day of August, 2012.

*s/ Charles A. Gower*
CHARLES A. GOWER
Georgia Bar No. 303500

1425 Wynnton Road
P.O. Box 5509
Columbus, Georgia 31906
(706) 324-5685