IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

JANE MCGINNIS,            :
                                :
Plaintiff,                :
                                :
v.                          :          Civil Action
                                :          No. 5:11-CV-284 (CAR)
AMERICAN HOME MORTGAGE    :
SERVICING INC.,            :
                                :
      Defendant.          :
_____ :

ORDER ON RENEWED MOTION FOR JUDGMENT
AS A MATTER OF LAW & MOTION FOR NEW TRIAL

Following a jury verdict and entry of judgment in favor of Plaintiff Jane McGinnis, Defendant Homeward Residential, Inc. f/k/a American Home Mortgage Servicing Inc. (herein "Homeward") filed a Renewed Motion for Judgment as a Matter of Law [Doc. 105] and, in the alternative, a Motion for New Trial and/or Remittitur [Doc. 104]. Homeward has also filed a Request for Hearing [Doc. 116] on these motions.

Because Homeward's motions are based on much of the same evidence and repeat many of the same arguments the Court previously considered on summary judgment and during Homeward's oral motion for judgment as a matter of law at the close of the evidence, the Court finds that a hearing and further oral argument is unnecessary. Homeward's Request for a Hearing [Doc. 116] is therefore **DENIED**.

1

After having now considered the extensive written briefs, the evidence present at trial, and the relevant law, the Court agrees with Homeward that the evidence at trial was not legally sufficient for a reasonable jury to find a "specific intent to harm."   The Renewed Motion for Judgment as a Matter of Law is thus **GRANTED in part**; and it is **ORDERED** that the punitive damages award be reduced to $250,000.00.[1]   The remainder of Homeward's Renewed Motion for Judgment as a Matter of Law and Homeward's Motion for a New Trial are, however, **DENIED**.

## BACKGROUND

This is an action for wrongful foreclosure, conversion, interference with property rights, and intentional infliction of emotional distress filed by a borrower, Plaintiff Jane McGinnis, against the company that serviced her loans, Defendant Homeward Residential, Inc.   The evidence at trial showed that, shortly after Homeward began servicing Plaintiff's non-residential mortgage in the Fall of 2009, there was in increase in the amount of her monthly payment, from $605.38 to $843.58, which Homeward attributed to an increase in the escrow.   Following two more escrow analyses, Plaintiff's monthly payment was reduced to $638.32.   Plaintiff disputed and refused to pay the increased amounts, and instead continued to submit her original monthly payment of $605.38.   Because of this, Plaintiff went into default, and Homeward foreclosed on the property.

---

[1] *See* O.C.G.A. § 51-12-5.1(g).

At trial, Plaintiff claimed that the foreclosure was wrongful and that her default was caused by Homeward's breach of their lending agreement.  Plaintiff asserts that Homeward breached a duty owed to her by unreasonably increasing her escrow payment, failing to give her proper notice of the increase, and failing to credit her account at the time payments were made.  Plaintiff put forth evidence that Homeward refused to reconsider its position that she was in default, harassed her for payments, and foreclosed on her property despite her attempts to cure the deficiency and pay the account in full, and in so doing, caused Plaintiff to suffer severe emotional distress.

Homeward, on the other hand, takes the position that Plaintiff simply refused to pay a routine increase in her escrow payment because she did not agree with it.  It presented evidence at trial that Plaintiff was in default, remained in default even after her escrow payments were reduced, failed to cure the deficiencies despite being given opportunities to do so, and thus left Homeward with no choice but to foreclose.

At the close of evidence, Homeward moved, pursuant to Federal Rule of Civil Procedure 50(a), for judgment as a matter of law on Plaintiff's claims for wrongful foreclosure, conversion, interference with property rights, and intentional infliction of emotional distress.[2]  The Court took the motion under advisement.[3]  The jury then returned a verdict in favor of Plaintiff and against Homeward as to all claims and awarded Plaintiff $6,000.00 in economic, compensatory damages, $500,000.00 in

---

[2] Tr. Vol. II at 208-228 [Doc. 109].
[3] Tr. Vol. III at 45 [Doc. 45].

emotional damages, and $3,000,000.00 in punitive damages.  After accepting the jury's verdict, the Court denied Homeward's motion for judgment as a matter of law.[4]

## PROCEDURAL POSTURE

Homeward has now filed two timely post-judgment motions challenging the jury's verdict in the case:  a Renewed Motion for Judgment as a Matter of Law, under Federal Rule of Civil Procedure 50(b) and, in the alternative, a Motion for a New Trial and/or Remittitur, under Federal Rule of Civil Procedure 59(a).   Although the arguments in both motions are very similar, the two motions "have wholly distinct functions and entirely different standards govern their allowance."[5]  If a motion for new trial is granted, the case is simply tried again; if the court grants a motion for judgment as a matter of law under Rule 50(b), the case is at an end.[6]  A Rule 50(b) motion is thus measured by a far more rigorous standard. "On a motion for a new trial, the court has a wide discretion to order a new trial whenever prejudicial error has occurred. On a motion for judgment as a matter of law, it has no discretion whatsoever and considers only the question of whether there is sufficient evidence to raise a jury issue."[7]

Where, as in this case, a party files alternative motions under Rules 50 and 59 making materially indistinguishable arguments, the arguments may be considered

---

[4] Order, Sept. 5, 2013 [Doc. 99].

[5] *State Farm Fire & Cas. Co. v. Silver Star Health and Rehab Inc.*, No. 6:10–CV–1103, 2012 WL 983775, at *1 (M.D. Fla. Mar. 22, 2012) (quoting 9A Wright & Miller, *Federal Practice and Procedure* § 2531 (3d ed.)).

[6] *Id.*

[7] *Id.*

together though the legal standards differ.[8]   In such cases, "the trial judge should rule on the motion for judgment. Whatever his ruling thereon he should also rule on the motion for a new trial, indicating the grounds of his decision."[9]

## STANDARDS OF REVIEW

I.     <u>Standard of Review under Rule 50(b)</u>

"The standard for granting a renewed motion for judgment as a matter of law under Rule 50(b) is precisely the same as the standard for granting the pre-submission motion under 50(a)."[10] Thus, regardless of whether the district court's analysis is undertaken before or after submitting the case to the jury, the question before the district court is, "whether the evidence is legally sufficient to find for the party on that issue."[11] "Any renewal of a motion for judgment as a matter of law under Rule 50(b)," however, "must be based upon the same grounds as the original request for judgment as a matter of law made under Rule 50(a) at the close of the evidence and prior to the case being submitted to the jury."[12]

"[I]n ruling on a party's renewed motion under Rule 50(b) after the jury has rendered a verdict, a court's sole consideration of the jury verdict is to assess whether

---

[8] *Tucker v. Housing Auth. of Birmingham Dist.*, 507 F. Supp.2d 1240, 1265 (N.D. Ala. 2006) (citing *Montgomery Ward & Co. v. Duncan*, 311 U.S. 243, 253 (1940)).
[9] *Duncan*, 311 U.S. at 253.
[10] *Chaney v. City of Orlando*, 483 F.3d 1221, 1227 (11th Cir. 2007) (quoting 9A C. Wright and A. Miller, *Federal Practice & Procedure* § 2537 (2d ed. 1995)).
[11] *Id.* (quoting Fed. R. Civ. P. 50).
[12] *Id.* (quoting *Doe v. Celebrity Cruises, Inc.*, 394 F.3d 891, 903 (11th Cir. 2004)).

that verdict is supported by sufficient evidence."[13]  "[T]he court must evaluate all the evidence, together with any logical inferences, in the light most favorable to the non-moving party."[14]  "[I]t is not the function of the Court to make credibility or factual determinations"; and "if there are conflicting inferences that can be drawn from that evidence, it is not the [c]ourt's role to pick the better one."[15]  "It is the jury's task - not [the court's] - to 'weigh conflicting evidence and inferences, and determine the credibility of the witnesses.'"[16]

A party seeking judgment as a matter of law under Rule 50 based on the sufficiency of the evidence has a heavy burden to carry.  The motion may be granted only "when the facts and inferences . . . point so strongly and overwhelmingly in favor of one party that the Court believes that reasonable men could not arrive at a contrary verdict.'"[17]  The Court must "affirm the jury verdict unless there is no legal basis upon which the jury could have found for [the prevailing party]."[18] "Conversely, if there is substantial evidence opposed to the motion such that reasonable people, in the exercise of impartial judgment, might reach differing conclusions," the jury's verdict must be

---

[13] *Id.*

[14] *Beckwith v. City of Daytona Beach Shores, Fla.*, 58 F.3d 1554, 1560 (11th Cir. 1995).

[15] *Marlite, Inc. v. Eckenrod*, No. 09–22607, 2011 WL 39130, at *3 (S.D. Fla. Jan. 5, 2011).

[16] *Shannon v. Bellsouth Telecomms., Inc.*, 292 F.3d 712, 715 (11th Cir. 2002) (quoting *Lipphardt v. Durango Steakhouse*, 267 F.3d 1183, 1186 (11th Cir. 2001)).

[17] *United States v. Vahlco Corp.*, 720 F.2d 885, 889 (11th Cir. 1983) (quoting *Boeing Co. v. Shipman*, 411 F.2d 365, 374 (5th Cir. 1969)).

[18] *Telecom Tech. Servs., Inc. v. Rolm Co.*, 388 F.3d 820, 830 (11th Cir. 2004).

left intact.[19]  Simply stated, a Rule 50 motion must be denied if there is any evidence from which the jury "reasonably could have resolved the matter the way it did."[20]

If a pure legal error is detected, the district court has an obligation and the power "to correct the error by vacating or reversing the jury's verdict."[21]  "Similarly, where a portion of a verdict is for an identifiable amount that is not permitted by law, the court may simply modify the jury's verdict to that extent and enter judgment for the correct amount."[22]  "If a reduction in damages is necessitated by legal error, the reduction is not a remittitur and a new trial is not required."[23]

## II.      Standard of Review under Rule 59(a)

A losing party may move for a new trial on grounds that "the verdict is against the great weight of the evidence, that the damages are excessive, or that, for other reasons, the trial was not fair . . . ; and may raise questions of law arising out of alleged substantial errors in admission or rejection of evidence or instructions to the jury."[24]  Thus, under Rule 59(a), a district judge may, in his discretion, grant a new trial "if in his opinion, 'the verdict is against the clear weight of the evidence . . . or will result in a

---

[19] *Carter v. City of Miami*, 870 F.2d 578, 581 (11th Cir. 1989).

[20] *Rodriguez v. Farm Stores Grocery, Inc.*, 518 F.3d 1259, 1264 (11th Cir. 2008).  "A mere scintilla of evidence is not sufficient to support a jury verdict," however. *Robbins v. Koger Props., Inc.*, 116 F.3d 1441, 1446 (11th Cir. 1997).  There must be "enough evidence that reasonable minds could differ concerning material facts." *U.S. Anchor Mfg. v. Rule Indus., Inc.*, 7 F.3d 986, 993 (11th Cir. 1993).  "The issue is not whether the evidence was sufficient for [the losing party] to have won, but whether the evidence was sufficient for it to have lost." *Rodriguez*, 518 F.3d at 1264-65.

[21] *Johansen v. Combustion Eng'g, Inc.*, 170 F.3d 1320, 1330 (11th Cir. 1999).

[22] *Id.* ("[T]he district court [may] strike the unconstitutional excess from a jury's punitive damage award and enter judgment for that amount.").

[23] *Id.*

[24] *Duncan*, 311 U.S. at 251; *Steger v. Gen. Elec. Co.*, 318 F.3d 1066, 1081 (11th Cir.2003).

miscarriage of justice, even though there may be substantial evidence which would prevent the direction of a verdict.'"[25]

When ruling on a motion for new trial, however, the judge should not substitute his own credibility choices and inferences for the reasonable credibility choices and inferences made by the jury.[26]  For this reason, "new trials should not be granted on evidentiary grounds unless, at a minimum, the verdict is against the great - not merely the greater - weight of the evidence."[27]  "A trial court should not grant a new trial merely because the losing party could probably present a better case on another trial";[28] nor is the court free "to set aside the verdict merely because the judge might have awarded a different amount of damages."[29]  Rule 59 also cannot be used by the losing party to raise arguments that could, and should, have been made before the judgment was issued;[30] a motion for new trial is not "a chance for [a party] to correct poor strategic choices."[31]

On the other hand, on a motion for new trial, the trial judge is permitted to set aside the verdict even though there is substantial evidence to support it.[32] The judge is also "not required to take that view of the evidence most favorable to the verdict-

---

[25] *Hewitt v. B.F. Goodrich Co.*, 732 F.2d 1554, 1556 (11th Cir. 1984) (quoting *United States v. Bucon Constr. Co.*, 430 F.2d 420, 423 (5th Cir. 1970)).  *See also Lipphardt,* 267 F.3d at 1186.

[26] *Williams v. City of Valdosta*, 689 F.2d 964, 973 (11th Cir. 1982).

[27] *Lipphardt,* 267 F.3d 1186.

[28] *Hannover Ins. Co. v. Dolly Trans Freight, Inc.*, 2007 WL 170788, *2 (M.D. Fla. Jan. 18, 2007).

[29] 11 Charles Alan Wright, Arthur R. Miller, & Mary Kane, *Federal Practice and Procedure* § 2807 (3d ed.).

[30] *Michael Linet, Inc. v. Village of Wellington, Fla.*, 408 F. 3d 757, 763 (11th Cir.2005).

[31] *S.E.C. v. Bilzerian*, 729 F. Supp. 2d 9, 15 (D.D.C. 2010).

[32] 11 Charles Alan Wright, Arthur R. Miller, & Mary Kane, *Federal Practice and Procedure* § 2806 (3d ed.).

winner" and is free to weigh the evidence.[33] "The mere fact that the evidence is in conflict is not enough to set aside the verdict, however."[34] "Indeed the more sharply the evidence conflicts, the more reluctant the judge should be to substitute his judgment for that of the jury."[35] The district court thus has less freedom to disturb a jury verdict in cases involving simple issues or highly disputed facts than it does in cases involving complex issues, facts not highly disputed, and events arguably marred by error.[36]

If the court finds that a jury's award of damages is excessive, it may grant a new trial, but the trial judge also has the discretion to, in the alternative, order remittitur and reduce the damages.[37] Although the decision whether to grant a new trial or remittitur on the grounds of excessive damages is a matter within the sound discretion of the district judge, the non-moving party must be given the option of a new trial in lieu of remitting a portion of the jury's award.[38]

## DISCUSSION OF ARGUMENTS

As noted above, the motions currently before the Court are based on much of the same evidence and repeat many of the same arguments the Court previously considered on summary judgment and during Homeward's oral motion for judgment

---

[33] *Id.*

[34] *Id.*

[35] *Id.*

[36] *Williams,* 689 F.2d at 973.

[37] Fed. R. Civ. P. 59; *Peer v. Lewis,* No. 06-60146, 2008 WL 2047978, at *17 (S.D. Fla. May 13, 2008) (citing *Johansen,* 170 F.3d at 1329).

[38] *Peer,* 2008 WL 2047978 at *17 (citing *Simon v. Shearson Lehman Bros., Inc.,* 895 F.2d 1304, 1310 (11th Cir. 1990)).

as a matter of law at the close of the evidence.  In the Renewed Motion for Judgment as a Matter of Law, Homeward asserts that there was insufficient evidence for the jury to reasonably find in favor of Plaintiff as to her claims of wrongful foreclosure, conversion, and intentional infliction of emotional distress;[39] that there was no evidence to support the award of damages; and that the amount of punitive damages awarded violates due process.   In the alterative, Homeward has moved for a new trial under Rule 59(a) and argues that the weight of the evidence does not support the verdict as to either the substantive claims or the award of damages.  Homeward also argues that it is entitled to a new trial and/or remittitur because the jury instruction on wrongful foreclosure contained substantial error and the award of damages is excessive.

The Court will now consider each of Homeward's arguments in turn under both of the relevant standards of review.

## I.      Wrongful Foreclosure Claim

Throughout this action and at trial, Plaintiff claimed that Homeward caused her default and thus wrongfully foreclosed on her property.  Under Georgia law, a debtor bringing a claim of wrongful foreclosure must establish a legal duty owed to her by the

---

[39] Homeward's Renewed Motion for Judgment as a Matter of Law makes no reference to Plaintiff's interference claim, and the Motion for New Trial only mentions it in passing when arguing that Plaintiff failed to prove wrongful foreclosure.

foreclosing party; a breach of that duty; a causal connection between the breach and the injury she sustained; and damages.[40]

In both motions now before the Court, Homeward contends that Plaintiff did not carry her burden on the breach or causation elements of a wrongful foreclosure claim. As to the breach element, Homeward argues that there was insufficient evidence presented at trial to show that Homeward (1) failed to provide notice of the increase in the escrow payment before it was due; (2) increased Plaintiff's escrow payments in an amount and manner inconsistent with their loan agreement; or (3) failed to properly credit payments made to Plaintiff's account.  As to causation, Homeward argues that, as a matter of law, Plaintiff's default precludes her claim for wrongful foreclosure.  In the alternative, Homeward argues that it is entitled to a new trial because the Court improperly permitted the jury to find wrongful foreclosure despite Plaintiff's default and allowed the jury to determine the reasonableness of the escrow increase.

## A. There is Sufficient Evidence to Support the Jury's Finding of Wrongful Foreclosure

Homeward first argues that the jury could not have reasonably found in favor of Plaintiff on her wrongful foreclosure claim based on the evidence presented. As Homeward contends, it was undisputed (at trial) that Plaintiff may have received some

---

[40] *DeGolyer v. Green Tree Servicing, LLC*, 291 Ga. App. 444, 448 (2008) (quoting *Heritage Creek Dev. Corp. v. Colonial Bank*, 268 Ga. App. 369, 371 (2004)).

notice of an increase in her monthly loan payment prior to November 1, 2009.[41]   It is likewise undisputed that Plaintiff was in default at the time of the foreclosure. Nonetheless, the Court finds that there was sufficient evidence from which a jury could reasonably conclude that Homeward breached a duty owed to Plaintiff and that Homeward's actions caused Plaintiff's default and injuries.

### 1. *Evidence of Failure to Provide Notice*

Homeward contends that no reasonable jury could have found that it failed to provide Plaintiff with notice of the escrow increase because of Adam McGinnis's trial admission that Plaintiff may have received a payment coupon with a letter sent prior to November 1, 2009, which showed her monthly payment to be $843.58.[42]   Mr. McGinnis did, in fact, make this admission.   A reasonable jury, however, could have given the admission less weight than Homeward assumes it was due.

The payment coupon, on which Homeward now solely relies, did not indicate that it was intended to serve as notice of a temporary increase in Plaintiff's monthly payment.   It also did not provide any explanation for the increase or make any reference to an escrow shortage for that year.[43]   The letter merely advised Plaintiff that a new company was servicing her account and that she should expect a regular monthly

---

[41] Tr. Vol. II at 75 [Doc. 109].
[42] *Id.* at 75-76.
[43] *See* Tr. Vol. I at 68 [Doc. 108]; Tr. Vol. II at 75 [Doc. 109]; Ex. D-89 [Doc. 90-5].

statement.[44]   Furthermore, when Mr. McGinnis acknowledged that Plaintiff may have received this payment coupon, he also testified that, even if the coupon was attached to the letter, it would have been questioned because it wrongly showed her to be behind in payments.[45]   McGinnis further testified that Plaintiff did not receive any monthly statements thereafter.[46]

From this, a reasonable jury could conclude that, while Plaintiff may have received a coupon showing a payment of $843.58 due prior to her default, she was not sufficiently notified of a legitimate increase in her monthly payment or of an escrow shortage at that time.   This would then support a finding that Homeward failed to provide notice of the increase.   Mr. McGinnis's trial admission thus did not necessarily foreclose a finding in favor of Plaintiff.

### 2.   *Evidence of an Unreasonable Increase in Escrow Payments*

There was likewise sufficient evidence from which a jury could reasonably conclude that the 2009 escrow increase breached a duty owed to Plaintiff.   In response to Homeward's motions, Plaintiff argues that a reasonable jury could have reached this conclusion based on the vast disparity between the October and November escrow payments alone.[47]   Indeed it is undisputed that Plaintiff was current on her account

---

[44] *See* Tr. Vol. II at 8, 63, 100, 126, 140 [Doc. 109].   The letter also stated that the transfer to a new servicer would not affect any terms or conditions of the mortgage instruments.   *See* Ex. D-89 [Doc. 90-5].
[45] *See* Tr. Vol. II at 75-76 [Doc. 109].
[46] *Id*. at 8, 163-64.
[47] *See also* Order on Def.'s Pending Mtns., July 2, 2013, at 35 [Doc. 62] (finding a jury could conclude that an escrow estimate that increased a monthly payment from $115.45 to $353.45 was unreasonable).

prior to November 1, 2009,[48] and that, once Homeward took over the servicing of Plaintiff's loan in October of 2009, her monthly payments immediately increased from $605.38 to $843.58 with little or no explanation for the increase.[49]

At trial, the jury was also instructed that, if there was a shortage in Plaintiff's escrow, Homeward only had two options under the terms of the Security Deed:  It could choose to either allow a shortage to exist or require Plaintiff "to repay the shortage in equal monthly payments over at least twelve months."[50]  The jury was then presented with evidence that Homeward's escrow increase would have recouped any shortage in much less than twelve months and that if the amount demanded was collected over twelve months, the escrow collected would total two or three times the amount needed to cover Plaintiff's tax and insurance costs.[51]  The evidence additionally showed that Homeward performed a third escrow analysis, in February of 2010, that reduced Plaintiff's payment from $843.58 to $638.32,[52] a number much more in line with what she had previously been paying.[53]  Yet, Homeward still insisted that Plaintiff owed payments of $843.59 from November, 2009 through April, 2010.[54]

---

[48] Tr. Vol. I at 62-63, 78 [Doc. 108]; Tr. Vol. II at 9, 11, 26 [Doc. 109]; Delbene Dep. at 38-39 [Doc. 46].

[49] Tr. Vol. II at 14, 16, 50 [Doc. 109].  *See also,* Ex. D-89 [Doc. 90-5].

[50] Jury Instructions at 12 [Doc. 91].  Homeward does not now, in either motion, raise an objection to this instruction or argue that this was error.

[51] Homeward sent an escrow disclosure statement to Plaintiff in December of 2009, which showed a shortage amount of $616.83. Ex. D-314 [Doc. 90-15]. Plaintiff's expert calculated the shortage in 2009 at $663.94.  Tr. Vol. I at 94 [Doc. 108].

[52] Tr. Vol. II at 16-18, 84 [Doc. 109].

[53] Pl.'s Ex. 8 [Doc. 89-20].

[54] Vol. II at 18, 35, 50, 84, 143 [Doc. 109].

From this circumstantial evidence, a reasonable jury could have inferred that the payments demanded by Homeward were unreasonable and that, by demanding these payments, Homeward breached a duty owed to Plaintiff.

On this issue, Mr. McGinnis also testified that he knew the increase was an error based on his calculations and experience managing Plaintiff's properties.[55]  This went factually unrebutted by Homeward, as it chose not to offer any evidence as to exactly how it arrived at the $843.58 payment.  The evidence in the case instead showed that Plaintiff repeatedly brought this error to Homeward's attention, but Homeward failed to verify or produce a copy of the October 2009 escrow analysis.[56]  The jury could have reasonably considered this as evidence of Homeward's knowledge of its breach and refusal to correct it in violation of its duty to comply with the Security Deed.

Homeward now argues, however, that the jury could not have found that the 2009 escrow increase violated the terms of the Security Deed absent expert testimony on the issue and thus it was error to permit the jury to consider Mr. McGinnis's lay opinion as evidence of a breach.  Homeward provides no legal support for this contention; and the Court disagrees.  Because the estimation of an escrow payment involves only a basic mathematical calculation, McGinnis's testimony was properly considered by the jury.[57]

---

[55] *Id.* at 14-15; 143.

[56] *Id.* at 11-12, 14-15, 19-21, 24-29, 35, 51, 62.

[57] *See* Fed. R. Civ. P. 701 (allowing lay testimony where the subject matter is "not based on scientific, technical, or other specialized knowledge within the scope of Rule 702").  *Cf. United States v. Hamaker*, 455 F.3d 1316, 1331-32 (11th Cir. 2006) (holding that a lay witness could testify to conclusions based on simple arithmetic calculations); *United States v. Madison*, 226 F. App'x 535, 543–44 (6th Cir. 2007) (holding that a

The Court is equally unpersuaded by Homeward's argument that the admission of lay testimony on this issue conflicts with the Court's order limiting the scope of testimony of Plaintiff's expert, Thomas Berry.  The Court precluded Mr. Berry from testifying that Homeward's escrow analysis was "incorrect"; and, as Homeward contends, the Court did so because Mr. Berry's opinion was based on his personal, subjective views.[58]  The exclusion of Mr. Berry's opinion was thus not based on a finding that Mr. Berry was unqualified to offer this opinion.  The exclusion was instead based on the fact that his testimony – i.e., his inferences as to the accuracy of Homeward's escrow analysis – would not be helpful to the jury: The Court found that his opinion involved "lay matters which a jury is capable of understanding" and offered "nothing more than what Plaintiff's lawyer [could] argue to the jury."[59]  The Court's order excluding Mr. Berry's testimony as to the accuracy of Homeward's escrow increase is thus not inconsistent with the Court's permitting the jury to consider Mr. McGinnis's lay testimony as to why he believed the increase to be unreasonably high.

---

lay witness may give an opinion based on application of simple arithmetic); *American Gen. Life Ins. Co. v. Schoenthal Family*, LLC, 248 F.R.D. 298, 306 (N.D. Ga. 2008) (allowing lay testimony regarding the calculation of acceptable policy ranges because it involved a "straightforward arithmetic procedure"); *Trustees of Operating Eng'rs Pension Trust v. Smith-Emery Co., Inc.*, 906 F. Supp. 2d 1043, 1069 n. 30 (C.D. Cal. 2012) ("[A] lay witness can permissibly testify as to the proper amount of interest that is owed, for example, based on simple mathematical computation"); *Chao v. Tyson Foods, Inc.*, 568 F. Supp. 2d 1300, 1326 (N.D. Ala. 2008) ("While . . . calculations include[d] inferences, assumptions, and derivations that arguably exceeded simple arithmetic, they did not appear to exceed understanding of lay witness or require knowledge of expert to reach conclusions presented."); *Smith v. Illinois Ass'n of School Bd*., No. 3–10–CV–00242, 2012 WL 895426, at *3 (S.D. Ill. Mar. 15, 2012) ("[U]nder Evidence Rule 701 he is competent to testify as to his damages as the calculations are simple math").

[58] Order on Def.'s Pending Mtns., July 2, 2013, at 25-27 [Doc. 62].

[59] *Id*.

### 3. *Evidence of Failure to Credit Payments*

Homeward next contends that the jury could not have reasonably concluded, based on the undisputed evidence at trial, that it failed to credit any payments to Plaintiff's account.   The Court finds, however, that there was sufficient evidence to support the jury's finding.

At trial, both Mr. Berry[60] and Mr. McGinnis[61] testified that Homeward failed to credit Plaintiff's account for a payment made prior to November 1, 2009.   Homeward's witness, Christopher Delbene, also testified to this fact initially;[62] it was not until after some prompting by Homeward's counsel that he testified otherwise.[63]   From this testimony, a reasonable jury could find that Homeward failed to properly credit a payment to Plaintiff's account.   Again, it is the jury's task - not the Court's – "to weigh conflicting evidence and inferences, and determine the credibility of the witnesses."[64]

It was also undisputed that Plaintiff's account was not credited as her monthly payments were made, but rather Homeward placed her monthly payments in a

---

[60] Tr. Vol. I at 63-64, 67, 74, 78-79 [Doc. 108].   According to Homeward, Mr. Berry admitted that the payment on the November 3, 2009, statement showed a past due payment for November, not a payment owed to prior lender.   The jury may not have heard the testimony that way, however, as Mr. Berry also stated that, in his opinion, the November payment was not late until November 15th, and he did not agree with counsel's assertion that the payment was past due on November 3, 2009.  *Id.* at 102-103.

[61] Tr. Vol. II at 11-12, 23-24, 26, 35, 51, 112, 113, 143 [Doc. 109].   Mr. McGinnis testified Homeward told him, in February of 2010, that a payment made to Taylor, Bean, and Whitaker had not been credited to his account. *Id.* at 23-24.

[62] Delbene Dep. at 29, 32-36 [Doc. 46].

[63] *Id.* at 43.

[64] *Shannon v. Bellsouth Telecomms., Inc.*, 292 F.3d 712, 715 (11th Cir. 2002).

suspense account until additional funds arrived.[65]   Homeward now argues, as it did on summary judgment, that it was entitled to withhold the funds in the suspense account under the terms of the Security Deed.   This argument, however, "assumes that Plaintiff's monthly payments were reasonable and correct and thus Plaintiff was required to pay the amount Homeward charged."[66]   If, at trial, the jury believed the monthly payments charged by Homeward were not reasonable and correct, then it could have also have found that Homeward was not entitled to hold Plaintiff's monthly payments in suspense.   In such a case, a reasonable jury could, based on this evidence, also conclude that Homeward did not properly credit payments to Plaintiff's account.

### 4.  *Plaintiff's Default and Injury*

Finally, in its Rule 50(b) motion, Homeward contends that, as a matter of Georgia law, a borrower in default cannot prevail on a claim of wrongful foreclosure.[67]   The Court disagrees.   Contrary to Homeward's assertions,[68] the mere fact that a debtor is in default at the time of the foreclosure does not necessarily bar a wrongful foreclosure action under Georgia law.[69]   A defaulting debtor can still prove the elements of a

---

[65] Tr. Vol. I at 79-81 [Doc. 108]; Delbene Dep. at 45, 79, 87-88 [Doc. 46].

[66]  Order on Def.'s Pending Mtns., July 2, 2013, at 41 [Doc. 62].

[67] Def.'s Br. in Support of Rule 50(b) Mtn. at 29 [Doc. 114].

[68] In support of these arguments, Homeward cites to a single, unpublished district court opinion from the North District of Georgia, *Kynes v. PNC Mortgage*, No. 1:12–CV–4477, 2013 WL 4718294, at* 9 (N.D. Ga. Aug. 30, 2013), which states that "[f]ailure to make the proper loan payments defeats a wrongful foreclosure claim."  *Kynes* is plainly distinguishable from this case:  There, the court found that there was "no genuine issue of material fact as to whether [the lender] breached any duty owed to [the plaintiffs]."

[69] *Armstrong v. Ocwen Mortg. Co.*, No. CV413–010, 2014 WL 1319389, at *4 (S.D. Ga. March 28, 2014) (citing *Brown v. Freedman*, 222 Ga. App. 213, 215 (1996)).

wrongful foreclosure claim.[70]   If not, it would be almost impossible "for any party wrongfully put into default by the inappropriate action of a creditor to obtain relief."[71] However, claims by a debtor in default will only be successful if he is able to prove that the foreclosing party caused the default.[72]   This may be done through evidence that the foreclosing party violated provisions of either the loan instruments or Georgia law,[73] and proof of "a causal connection between" that breach and the plaintiff's injury.[74]   If the debtor's injuries are attributable "solely to [his] own failure to pay, [he] cannot recover for wrongful foreclosure."[75]

In anticipation of this finding, Homeward argues that, even if the default did not bar Plaintiff's wrongful foreclosure claim, no reasonable jury could have found that the default was attributable to anything other than Plaintiff's own failure to pay. Homeward emphasizes that Mr. McGinnis, on behalf of Plaintiff, refused to pay more than $605.58 when Homeward reduced the monthly payment to $638.32, even though he admitted Plaintiff owed more than what she was paying.  Homeward contends that the jury was thus required to find that Plaintiff's undisputed failure to pay the full

---

[70] *Id.*

[71] *Id.*

[72] *Id.*; *Heritage Creek Dev. Corp. v. Colonial Bank*, 268 Ga. App. 369, 371–72 (2004).

[73] *See Heritage Creek*, 268 Ga. App. at 374; *McCarter v. Bankers Trust Co.*, 247 Ga. App. 129, 132 (2000).  *See also, e.g., Rourk v. Bank of Am. Nat'l Ass'n*, No. 4:12–CV–42 (CDL), 2012 WL 3745953, at *6 (Aug. 28, 2012) (holding that plaintiff stated a viable claim for conversion under Georgia law based on the bank's alleged unlawful collection of fees and expenses from plaintiff); *James v. Litton Loan Servicing, L.P.*, No. 4:09–CV–147 (CDL), 2011 WL 59737, at *12 (M.D. Ga. Jan. 4, 2011) (finding that plaintiffs stated a viable claim for conversion under Georgia law based on the bank's alleged misapplication of plaintiffs' loan payments).

[74] *See Heritage Creek*, 268 Ga. App. at 372.

[75] *Rourk*, 2013 WL 5595964, at* 6 (citing *Heritage Creek*, 268 Ga. App. at 372).

amount of her monthly payment, even after Mr. McGinnis admitted she owed more, was the sole cause of her injuries.

The Court again disagrees.  Although there was evidence that Plaintiff failed to make full payments of $638.32 during the relevant time period, there was also evidence presented which would have permitted the jury to find that this was not the sole cause of Plaintiff's injuries.  McGinnis testified that he attempted to bring the account current during this time and learned that he could not (and would thus remain in default) as long as he disputed the prior increase.[76]   Mr. McGinnis also offered to pay off the account in full, but Homeward would not permit him to do so unless he also paid the amounts and fees in dispute.[77]   Plaintiff's expert, Mr. Berry, likewise testified that Plaintiff would remain in default unless she paid the challenged amounts.[78]

The Court additionally finds that Mr. McGinnis's testimony regarding his confusion about the actual amounts owed and Homeward's lack of assistance would further support a finding that Plaintiff's failure to make full payments after the escrow reduction did nothing to exacerbate the damage already done by Homeward's earlier breach.  In other words, a reasonable jury could have concluded that Plaintiff's failure to remit full payments, although a breach of the lending agreement, was excused due to

---

[76] Tr. Vol. II at 29, 35, 112 [Doc. 109].
[77] *Id.* at 30.
[78] Tr. Vol. I at 69 [Doc. 108].

Homeward's earlier breaches and errors and the resulting confusion surrounding her account.[79]

For this reason, and all others discussed above, the Court concludes that there was sufficient evidence from which a jury could have reasonably found in favor of Plaintiff on her wrongful foreclosure claim.  Of course, there was also evidence presented at trial which would permit the jury to find in favor of Homeward.  However, the question before the Court, under Rule 50(b), is whether there was "enough evidence that reasonable minds could differ concerning material facts."[80]  "The issue is not whether the evidence was sufficient for [the losing party] to have won, but whether the evidence was sufficient for it to have lost."[81]  Because the Court finds that "reasonable people, in the exercise of impartial judgment, might reach differing conclusions"[82] in this case, Homeward's Renewed Motion for judgment as a Matter of Law must be **DENIED** as to the wrongful foreclosure claim.

B. The Jury's Finding of Wrongful Foreclosure Was Not Against the Clear Weight of the Evidence and Will Not Result in a Miscarriage of Justice

In its Rule 59(a) Motion for New Trial, Homeward makes essentially the same evidentiary arguments as it does in its renewed motion for judgment as a matter of law. It additionally argues, however, that it is entitled to a new trial as to Plaintiff's wrongful

---

[79] *Cf. Catalan v. GMAC Mortg. Corp.*, 629 F.3d 676, 692 (7th Cir. 2011) (finding fact question as to whether the plaintiffs' failure to remit a timely payment was excused because of "the lenders' earlier breaches and errors and the resulting confusion surrounding their account").

[80] *U.S. Anchor Mfg. v. Rule Indus., Inc.*, 7 F.3d 986, 993 (11th Cir. 1993).

[81] *Rodriguez v. Farm Stores Grocery, Inc.*, 518 F.3d 1259, 1264-65 (11th Cir. 2008).

[82] *Carter v. City of Miami*, 870 F.2d 578, 581 (11th Cir. 1989).

foreclosure claim because the Court incorrectly permitted the jury (1) to find for Plaintiff even if she was in default at the time of foreclosure, and (2) to determine the reasonableness of the increased escrow payments.

The Court does not find substantial error in either the Court's instruction or the submission of these issues to the jury. As explained in detail above, the mere fact that a debtor is in default does not necessarily preclude a finding of wrongful foreclosure. As also discussed above, there is sufficient evidence from which the jury could have reasonably found that the escrow increase in 2009 breached a duty owed to Plaintiff which in turn caused her injury, and expert testimony as to the reasonableness of the escrow payment was not required for the jury to find a breach. After weighing the evidence presented at trial and considering all of those arguments discussed above under the less stringent standard applicable under Rule 59 – the Court further finds that the jury's verdict on the wrongful foreclosure claim is not against the clear weight of the evidence and will not result in a miscarriage of justice. Plaintiff's Motion for New Trial on the wrongful foreclosure claim is accordingly **DENIED.**

## II.    Conversion Claim

Homeward next contends that Plaintiff's conversion claim fails as a matter of law. In the alternative, Homeward argues that the jury's verdict on the conversion claim was against the clear weight of evidence.

A. <u>There was Sufficient Evidence to Support a Jury Finding of Conversion</u>

At trial, Plaintiff argued that Homeward unlawfully converted her loan payments by refusing (1) to apply payments to her mortgage account and (2) to remove and refund the unauthorized fees she was charged.  Under Georgia law, conversion is "[a]ny distinct act of dominion wrongfully asserted over another's property in denial of his right, or inconsistent with it."[83]  The jury was thus instructed that, in order to prove conversion, Plaintiff was required to show that "(1) she had an ownership interest in the loan payments; (2) Homeward actually possessed the loan payments; and (3) Homeward acted in a manner inconsistent with Plaintiff's right of possession."[84]

In its Rule 50(b) motion, Homeward now argues that Plaintiff's conversion claim fails because, under Georgia law, "the misapplication of lawfully acquired funds could not, as a matter of law, constitute conversion of personal property."[85]  Homeward then appears to suggests that, to state a claim for conversion, Plaintiff was required to present evidence that Plaintiff demanded return of her property and Homeward

---

[83] *Md. Cas. Ins. Co. v. Welchel*, 257 Ga. 259, 261 (1987).

[84] *See* Jury Instructions at 14-16 [Doc. 91].

[85] Def.'s Br. in Support of Rule 50(b) Mtn. at 32 [Doc. 114] (citing *Kin Chun Chung v. JPMorgan Chase Bank, N.A.*, 975 F. Supp. 2d 1333, 1346-47 (N.D. Ga. 2013)).

In its Reply Brief [Doc. 122], Homeward alternatively argues (for the first time) that there was insufficient evidence in the trial record to show that Plaintiff had an "ownership interest" in the loan payments after she made them. This argument will not be considered; Homeward cannot unveil new arguments for the first time in a reply brief.  *Herring v. Sec'y of Corrs.*, 397 F.3d 1338, 1342 (11th Cir. 2005) ("Arguments raised for the first time in a reply brief are not properly before a reviewing court.").  *See also, e.g., Adams v. Homeward Residential, Inc.*, Civ. No. 13–0329, 2014 WL 460936, at *5 n.10 (S.D. Ala. Feb. 5, 2014) ("Federal courts generally do not consider new arguments presented for the first time in a reply brief."). Furthermore, as discussed, *infra*, this argument (if considered) would also fail because it was not previously raised in Homeward's Rule 50(a) motion.

unlawfully refused.  It is thus unclear whether Homeward is challenging the sufficiency of the evidence or claiming legal error.

Regardless, the Court is not persuaded that Plaintiff was required to show that she demanded the return of her payments, as Homeward now seems to suggest.  The majority of cases faced with facts similar to those presented here have found that evidence of a failure to properly credit a borrower's monthly mortgage payment, despite the borrower's request that it do so, will support a claim for conversion.[86]   In accord with those cases, the Court finds sufficient evidence here to support a conversion claim.  The trial record shows that Mr. McGinnis requested that Homeward credit Plaintiff's account for payments made prior to November 1, 2009, on multiple occasions and asked that Homeward apply all payments to her account rather than holding them in suspense.[87]  There is also evidence that Homeward refused to comply with Plaintiff's

---

[86] *See, e.g., Blackburn v. BAC Home Loans Serv., LP*, 914 F. Supp.2d 1316, 1325 (M.D. Ga. 2012) (denying summary judgment on conversion claim based on servicer's failure to apply payments and wrongful collection fees and expenses); *See James v. Litton Loan Servicing, LP*, No. 4:09–CV–147, 2011 WL 59737, at *12 (M.D. Ga. Jan. 4, 2011) (denying summary judgment on conversion claim where plaintiffs presented evidence that servicer intentionally delayed applying payments to account in order to charge interest and late fees); *Stroman v. Bank of Am. Corp.*, 852 F. Supp. 2d 1366, 1378-79 (N.D. Ga. 2012) (denying motion to dismiss conversion claim where plaintiff alleged lender converted her money by holding her monthly mortgage payments in a separate account rather than applying them to her loan balance in order to extract unlawful late fees, interest and other charges); *Johnson v. Citimortgage, Inc.*, 351 F. Supp.2d 1368, 1372 (N.D. Ga. 2004) (finding that plaintiff had stated a conversion claim under Georgia law where plaintiff alleged that loan servicer failed to properly apply loan payment to plaintiff's outstanding loan). *But see Kin Chun Chung*, 975 F. Supp. 2d at 1346-47 (finding plaintiff's request that the lender acknowledge that her payments satisfied her payment obligations did not support the demand element of a conversion claim).

[87] Tr. Vol. II at 11-12, 14-15, 19-21, 24-29, 35, 51, 62.

requests.[88]   Therefore, a reasonable jury could have found a demand by Plaintiff for the

return of her payments to the proper account and Homeward's refusal to do so.

Homeward's Renewed Motion for Judgment as a Matter of Law is accordingly

**DENIED** as to Plaintiff conversion claim.

### B.   The Jury's Finding of Conversion was Not Against the Clear Weight of the Evidence

In the alternative, Homeward contends that it is entitled to a new trial on the

conversion claim because the jury's verdict was against the clear weight of the evidence.

The arguments made here are the same as those made by Homeward in its challenge to

Plaintiff's wrongful foreclosure claim.[89]   After considering those arguments and now

weighing the evidence presented at trial under the standard required by Rule 59, the

Court does not find that the jury's verdict is against the clear weight of the evidence.

Homeward's Motion for New Trial is thus **DENIED** as to Plaintiff's conversion claim.

### III.   IIED Claim & Emotional Distress Damages

Homeward next argues that the evidence at trial was not sufficient to satisfy the

elements required to state a claim for intentional infliction of emotional distress

("IIED").   Homeward alternatively contends that the jury's verdict in Plaintiff's favor on

the IIED claim is against the clear weight of the evidence.

---

[88] *Id.   Cf. James*, 2011 WL 59737 at *12 (evidence that servicer did not properly credit the plaintiff's account when the plaintiff demanded that it do so would support a conversion claim).
[89] *See* discussion *supra* Section I.A.

A. <u>There was Sufficient Evidence to Support the Jury's Finding of Intentional Infliction of Emotional Distress</u>

In order to sustain an IIED claim, a plaintiff must show that (1) the conduct giving rise to the claim was either intentional or in reckless disregard for the rights of others; (2) the conduct was extreme and outrageous; (3) the conduct caused emotional distress; and (4) the emotional distress was severe.[90]   In its post-verdict motions, Homeward now argues that Plaintiff's evidence failed to satisfy either the first or second element of an IIED claim.

As to the first element, Homeward argues that Plaintiff failed to present any evidence that Homeward acted with the "specific intent" to harm her.[91]   Georgia courts, however, have recognized that "an intentional wrongful foreclosure can be the basis for an action for intentional infliction of emotional distress."[92]   A showing of "specific intent" is also not necessarily required to support an IIED claim.   The state of mind element of an IIED claim is satisfied by evidence that the defendant acted in "reckless disregard of the rights of others."[93]   Under Georgia law, "a reckless and wanton

---

[90] *See Racette v. Bank of Am., N.A.*, 318 Ga. App. 171, 179 (2012); *Ward v. Papa's Pizza To Go, Inc.*, 907 F. Supp. 1535, 1540 (S.D. Ga. 1995) ("[T]he state of mind inquiry is met when the defendant acts in 'reckless disregard of the rights of others.'").

[91] Def.'s Br. in Support of Rule 50(b) Mtn. at 31 [Doc. 114].

[92] *Racette*, 318 Ga. App. at 179.  *See e.g., DeGolyer v. Green Tree Servicing, LLC*, 291 Ga. App. 444, 449 (2008) (evidence supported claim for intentional infliction of emotional distress where party proceeded with foreclosure and sale after being told it foreclosed on wrong property); *Clark v. West*, 196 Ga. App. 456, 457–458 (1990) (IIED claim could proceed where debtor alleged that foreclosing parties "knew the note was not in default and [that] they had no right to foreclose").

[93] *Ward v. Papa's Pizza To Go, Inc.*, 907 F. Supp. 1535, 1540 (S.D. Ga. 1995) (citing *Moses v. Prudential Ins. Co. of Amer.*, 187 Ga. App. 222, 224, 369 S.E.2d 541 (1988)).

disregard of consequences may evince an intention to inflict injury."[94]   Thus, while evidence of specific intent will certainly support and IIED claim, evidence of a specific intent to cause emotional distress is not required.[95]   For this reason, the jury in this case was instructed that they could find an intentional infliction of emotional distress if Homeward's "reckless" conduct caused Plaintiff's injuries:[96] "A party recklessly causes harm when [it] is aware of, but consciously and carelessly ignores, facts and circumstances clearly indicating that the consequences are substantially certain to result from the parties act."[97]

Here, if the jury believed Plaintiff's evidence and made all inferences in her favor, it could find that Homeward callously disregarded or outright ignored facts and circumstances clearly indicating that it had breached a duty owed to Plaintiff and caused her default.   From this a reasonable jury could conclude that, despite receiving this information, Homeward proceeded in the same course of conduct, blindly maintained its position without justification, and foreclosed on her property with conscious and careless disregard for the consequences substantially certain to occur.

---

[94] *E-Z Serve Convenience Stores, Inc. v. Crowell*, 244 Ga. App. 43, 45 535 S.E.2d 16 (2000) (claim of intentional infliction of emotional distress caused by conscious indifference, rather than specific intent, of defendant was properly sent to the jury for determination); *Hamilton v. Powell, Goldstein, Frazer & Co.*, 252 Ga. 149, 150 (1984) ("[I]t is equally well established that for a reckless disregard of the rights of others, equivalent to an intentional tort by the defendant, the injured party may recover for the mental pain and anguish suffered therefrom.") (internal citations omitted).

[95] *Id*; *Ekokotu v. Pizza Hut, Inc.*, 205 Ga. App. 534, 536 (1992) ("in order to sustain a claim for intentional infliction of emotional distress, appellant was 'required to put forth evidence that defendants' behavior was wilful and wanton or intentionally directed to harm [him].'").

[96] Jury Instructions at 19 [Doc. 91].

[97] *Id.* at 22.

There was thus sufficient evidence from which the jury could reasonably find that Homeward acted "in reckless disregard" for the rights of others.

It was not enough for Homeward to have acted recklessly, however.  To prevail on an IIED claim, Plaintiff must also establish that Homeward's conduct in this case was "extreme and outrageous."  The issue of whether conduct reaches this level is a question of law.[98]  "The rule of thumb in determining whether the conduct complained of was sufficiently extreme and outrageous is whether the recitation of the facts to an average member of the community would arouse . . . resentment against the defendant so that [he] would exclaim 'Outrageous!'"[99]  The conduct must "go beyond all reasonable bounds of decency so as to be regarded as atrocious and utterly intolerable in a civilized community" and "naturally give rise to such intense feelings of humiliation, embarrassment, fright or extreme outrage as to cause severe emotional distress."[100]  Evidence of "mere insults, indignities, threats, annoyances, petty oppressions, or other vicissitudes of daily living" will not satisfy this standard.[101]

Thus, the mere fact that a lender wrongly forecloses on a property is, in-and-of itself, "not the kind of action that rises to the level of extreme, outrageous, atrocious or intolerable conduct required to support a claim for intentional infliction of emotional

---

[98] *Racette*, 318 Ga. App. at 179 ("Whether a claim rises to the requisite level of outrageousness and egregiousness to sustain a claim for intentional infliction of emotional distress is a question of law.").
[99] *United Parcel Serv. v. Moore*, 238 Ga. App. 376, 377 (1999).
[100] *Id.*
[101] *Id.*

distress."[102]   Evidence of "[s]harp or sloppy business practices" are also not generally considered "as going beyond all reasonable bounds of decency as to be utterly intolerable in a civilized community."[103]   There must be evidence of more egregious conduct.  When there is evidence of more, however, Georgia courts have held that a jury can properly infer intentional infliction of emotional distress from a wrongful foreclosure and actions related to a wrongful foreclosure.[104]

The Court finds that this is one of those cases.  As Plaintiff's contends, Homeward's position as the servicer of her loans placed it in a position of power that magnifies the outrageousness of its conduct.  It is not a novel idea to say that "[t]he extreme and outrageous character of a defendant's conduct may . . . occur by virtue of an abuse . . . of a relationship which puts [the defendant] in a position of actual or apparent authority over plaintiff or gives defendant power to affect plaintiff's

---

[102] *Clark v. PNC Bank, N.A.*, 1:13–CV–1305–WSD, 2014 WL 359932, at *7 (N.D. Ga. Feb. 3, 2014).  *See e.g.*, *Ingram v. JIK Realty Co.*, 199 Ga. App. 335, 337 (1991) (affirming grant of summary judgment on intentional infliction claim where defendant's conduct consisted of wrongfully foreclosing on plaintiff's property).  *See also Racette*, 318 Ga. App. at 179 (that the defendant conducted the foreclosure sale despite knowing of inaccuracies in the published foreclosure advertisements "cannot be described as extreme, outrageous, atrocious, intolerable or beyond the bounds of decency.").

[103] *Moore*, 238 Ga. App. at 377.

[104] *Kerfoot v. FNF Servicing, Inc.*, No. 1:13–CV–33, 2013 WL 5797662, at *6 (M.D. Ga. Oct. 25, 2013) (finding complaint stated sufficient allegations for IIED claim where it alleged that mortgage company had been notified numerous times of the unlawfulness of the loan and yet "hounded the [plaintiffs] with letters and calls demanding payment at the threat of foreclosure.").  *See, e.g., DeGolyer*, 291 Ga. App. at 449-50 (finding evidence to support IIED claim where both plaintiff informed defendant that it was foreclosing on the wrong tract of property, but defendant nevertheless proceeded with foreclosure despite the lack of any legal description of the property attached to its security deed).

interests."[105]  In such cases, like this one, a finding of IIED would not be based solely on the wrongful foreclosure, but also on a series of intentional or reckless actions demonstrating an abuse of power by a lender over the debtor at its mercy.[106]

The evidence at trial, when viewed in the light most favorable to Plaintiff, showed that Plaintiff notified Homeward of errors in the handling of her account and thereafter attempted to resolve the errors in good faith.   Plaintiff's requests for clarification and/or correction were met with resistance and little, if any, help.[107] Homeward's agents either were unable or simply refused to justify the increased payment;[108] continued to insist that Plaintiff was behind a payment;[109] and failed to give notice of the increase or provide any monthly billing statements thereafter.[110]

Homeward's Rule 30(b)(6) witness, Christopher Delbene, may have in fact provided the jury with some insight into the attitude or approach employed by Homeward in this process.  During his testimony, Delbene insisted that the 2009 escrow analysis was correct, even though he had not seen the document and had not attempted

---

[105] *Warren v. June's Mobile Home Vill. & Sales, Inc.*, 66 Mich. App. 386, 391 (1976).  *See also*, *Ward*, 907 F. Supp. at 1540 ("The existence of a special relationship in which one person has control over another…may produce a character of outrageousness that otherwise might not exist.").

[106] *See, e.g.*, *Margita v. Diamond Mortg. Corp.*, 159 Mich. App. 181, 190 (1987) ("Defendants obviously have a great deal of power to affect plaintiffs' credit rating and future borrowing ability.").

[107] Tr. Vol. II at 24, 159 [Doc. 109].

[108] *Id*. at 14, 16.

[109] *Id*. at 11-12, 23-24; Delbene Dep. at 121-123 [Doc. 46].

[110] Tr. Vol. II at 8 [Doc. 109].  Mr. McGinnis in fact testified that Plaintiff did not receive monthly billing statements despite the fact that he had been "pleading" for a monthly statement since 2009.  *Id*. at 8, 163-64.

to calculate the escrow.[111]  Delbene then suggested that Plaintiff was required to pay any amount Homeward demanded, regardless of whether it appeared reasonable or in error, simply because that is what she "agreed to under the note and mortgage."[112] Homeward's position was that Plaintiff had to pay any amount demanded, and then dispute it or seek a refund at the end of year if necessary, regardless of whether she could afford to do so.[113]

There was also evidence that Homeward and its agents continually harassed Plaintiff by phone and mail[114] and proceeded with foreclosure proceedings even with the knowledge that Plaintiff was attempting to resolve these issues.[115]  Witnesses testified that Plaintiff did not abandon her obligation or cease making payments on the property. Plaintiff never missed a monthly payment,[116] though she did continue to dispute the amount Homeward demanded and paid a lesser amount (which was

---

[111] Delbene Dep. at 105 [Doc. 46].

[112] Id. at 63.

[113] Id. at 59-61. When finally faced with Plaintiff's calculations showing that the 300% increase in her escrow payment was unreasonable, Delbene stated,

> Sir, I'm sorry, but the borrower relinquished [her] right to pay [her] own taxes when [she] agreed in the loan document to pay an escrow fund. . . .  It is the servicer . . . to conduct an escrow analysis, not the borrower. We – we conduct our escrow analysis. We have a department dedicated to doing such, not the borrower. So until I see our escrow analysis with what number we determined went into that escrow, I will not be using the borrower's escrow to answer my questions.

Id. at 106.

[114] Tr. Vol. II. at 27, 163-64 [Doc. 109].

[115] Id. at 29-31, 33-34, 51-53, 59-60. Mr. McGinnis testified that, at one point, he sent Homeward forty-three pages, documenting every payment he had made, but received no response other than from a Homeward attorney who stated that she could see what McGinnis had done but "they" did not work for him and would not stop foreclosure proceedings unless she heard a response from Homeward telling her to do so. Id. at 37.

[116] Id. at 26.

sufficient to cover the principal, interest, and some escrow) as she attempted to resolve the dispute.[117]

Homeward, nonetheless, chose to foreclose on the property, despite Plaintiff's efforts to resolve the matter, inquiries as to how she could become current, and offer to pay full amount owed, minus any fees and overcharges in dispute.[118]  Homeward then began sending Plaintiff's checks back,[119] refusing to accept her payments, and ran a foreclosure notice in the local newspaper for four months - causing Plaintiff great embarrassment, fear, angst, and damage to her reputation.[120]  Ultimately, Homeward would sell Plaintiff's property on the courthouse steps for a mere $25,000.00,[121] though the unpaid principal balance on the loan was $69,529.00.  Thus, a balance of over $40,000.00 (that Plaintiff offered to pay if Homeward would concede its error and forgo the resulting fees) was left unpaid.[122]  Plaintiff's expert later estimated that the theoretical difference between what Plaintiff had paid and what was owed at the time of foreclosure was minimal – little more than $98.00.[123]

While it is true that some of the actions and failures by Homeward, when viewed individually, could be considered "mere insults, indignities, threats, annoyances, petty

---

[117] *Id*. at 35-36; Delbene Dep. at 185 [Doc. 46].

[118] Tr. Vol. II at 29-31 [Doc. 109].

[119] *Id*. at 40.

[120] *Id*. at 41-43, 65-66, 161-162.

[121] *Id*. at 43.

[122] Delbene Dep. at 155, 159 [Doc. 46].

[123] Mr. Berry testified that there were four checks that Plaintiff was not given credit for at the time she should have been which totaled $2,455.00, and at the time of foreclosure Homeward claimed $2,533.25 past due on the account;  a difference of only $98.22.  Tr. Vol. I at 85-86 [Doc. 108].

oppressions, or other vicissitudes of daily living,"[124] the totality of Homeward's actions – could be found to be "extreme and outrageous conduct" as a reckless, abusive and arbitrary exercise of power.  A reasonable person may declare that the whole scenario – ending with a foreclosure over a theoretical difference of less than $100.00 – to be "Outrageous!"  Although this was not Plaintiff's residence, the evidence did show that this property and all of the others threatened with foreclosure are Plaintiff's livelihood, her nest egg, her security, her life's work, and a representation of her character in the community.[125]  Plaintiff likewise provided evidence from which the jury could find that all of this has had a severe effect on Plaintiff both emotionally[126] and physically.[127]

The Court accordingly finds that, if the jury believed all of Plaintiff's evidence at trial, it could have reasonably found the presence of extreme and outrageous conduct, arising from an intentional and wanton abuse of power by Homeward, which caused Plaintiff to suffer severe emotional distress.   Homeward's Renewed Motion for Judgment as a Matter of Law on Plaintiff's IIED claim is therefore **DENIED**.

B. <u>The Jury's Verdict on the IIED Claim was Not Against the Clear Weight of the Evidence</u>

Homeward alternatively contends that, even if there is sufficient evidence to deny its Rule 50(b) motion, it is still entitled to a new trial because the jury's findings as

---

[124] *United Parcel Serv. v. Moore*, 238 Ga. App. 376, 377 (1999).
[125] Tr. Vol. II at 65-66, 154, 157, 161-62 [Doc. 109].
[126] *Id*; Sappington Dep. at 6-8, 19, 22, 59 [Doc. 82-2].
[127] Tr. Vol. II at 65-66, 154-155 [Doc. 109]; Sappington Dep. at 14 [Doc. 82-2].

to Plaintiff's IIED claim were against the clear weight of the evidence.   At trial, Homeward did present evidence to show that it did not intend to injure Plaintiff, but was simply doing business under a belief that Plaintiff was required to pay the amounts it demanded.   This includes evidence that Plaintiff was undisputedly in default and received some notice of the increase; that Plaintiff continually defaulted after the escrow was reduced; that Plaintiff was provided with opportunities to cure her default and refused; that the property involved was a commercial investment, not Plaintiff's home; and that Plaintiff is merely complaining of poor customer service and was, at times, equally as stubborn or difficult as Homeward's agents.

Yet, even after weighing all of the evidence presented by Plaintiff impartially against the evidence presented by Homeward under the less stringent standard of Rule 59, the Court cannot find that the jury verdict as to this claim was against the great - not merely the greater - weight of the evidence.[128]   The mere fact that the evidence is in conflict is not enough to set aside the verdict.[129]   Accordingly, Homeward's Motion for New Trial on Plaintiff's IIED claim is **DENIED**.

**IV.   Compensatory & Punitive Damages**

Because the Court will not disturb the jury's verdict as to Plaintiff's substantive claims, Homeward next challenges the award of damages.   Homeward's Rule 50(b) argument is three-fold: (1) Plaintiff cannot recover punitive damages under Georgia

---

[128] *Lipphardt v. Durango Steakhouse*, 267 F.3d 1183, 1186 (11th Cir. 2001).
[129] *Id*.

law, O.C.G.A. § 51-12-6, because there was no basis to award economic, compensatory damages; (2) even if Plaintiff can recover punitive damages, they must be capped at $250,000.00 because there is no evidence that Homeward acted with the "specific intent" to harm; and (3) even if Plaintiff can recover punitive damages in an amount more than $250,000.00, the award in this case violates due process.  In the alternative, Homeward argues, under Rule 59, that the Court should order a remittitur or a new trial because the jury's award of damages was excessive.

In response to this, Plaintiff argues that all of Homeward's arguments regarding damages have been waived because Homeward did not raise these issues in its Rule 50(a) motion at the close of evidence.  Plaintiff alternatively contends that the award of damages is supported by the evidence.

A. O.C.G.A. § 51-12-6

In its first argument, Homeward asserts that the jury was not permitted, as a matter of law, to award punitive damages to Plaintiff because there was no evidence, at trial, of a physical injury or of quantifiable economic damages in any amount.  Georgia law, O.C.G.A. § 51-12-6,  provides that "[i]n a tort action in which the entire injury is to the peace, happiness, or feelings of the plaintiff, no measure of damages can be prescribed except the enlightened consciences of impartial jurors. In such an action, punitive damages . . .  shall not be awarded."

The Court agrees with Plaintiff that, because Homeward did not make this or any closely-related argument in its Rule 50(a) motion at trial or during the charge conference,[130] Homeward cannot now raise the issue under Rule 50(b) or Rule 59.   "A motion under Rule 50(b) is not allowed unless the movant sought relief on similar grounds under Rule 50(a) before the case was submitted to the jury."[131]   Rule 59 is likewise not a vehicle "to raise arguments . . . that could have been raised prior to the entry of judgment."[132]   The purpose of these rules is, obviously, to avoid a post-verdict ambush of the court and counsel after trial when there is no longer an opportunity to cure the error.[133]

In this case, Homeward surprises both the Court and opposing counsel with a new legal argument regarding Plaintiff's claim for compensatory damages.  The Court could not locate, and Homeward did not identify, any portion of the record in which

---

[130] Vol. II at 198.

[131] *Middlebrooks v. Hillcrest Foods, Inc.*, 256 F.3d 1241, 1245 (11th Cir. 2001) (affirming the district court's finding that defendant had waived argument that O.C.G.A. § 51–12–6 precluded an award of punitive damages by not preserving it at trial).  *See also, Kelly v. City of Oakland*, 198 F.3d 779, 786 (9th Cir.1999) (holding that defendant could not challenge punitive damage award in a Rule 50(b) motion, where the defendant did not object to the jury instructions on punitive damages, and did not challenge the sufficiency of the evidence to support punitive damages in his Rule 50(a) motion).

[132] "If a party fails to move for judgment as a matter of law under Federal Rule of Civil Procedure 50(a) on an issue at the conclusion of all of the evidence, [it] waives both its right to file a renewed post-verdict Rule 50(b) motion and also its right to challenge the sufficiency of the evidence on that issue on appeal." *Flowers v. Regional Physician Svs.*, 247 F.3d 229, 238 (5th Cir. 2001).  *See also, Richardson v. Bombardier, Inc.*, No. 8:08–cv–544–T–31MSS, 2005 WL 3087864, at * 7 (M.D. Fla. Nov.16, 2005) ("[T]he moving party may not raise objections to alleged errors for the first time in a motion for new trial.") (citing *Nissho-Iwai Co., Ltd. v. Occidental Crude Sales, Inc.*, 848 F.2d 613, 619 (5th Cir. 1988)).  *C.f., Sands v. Kawasaki Motors Corp. U.S.A.*, 513 F. App'x 847, 856 (11th Cir. 2013) (affirming district court's denial of motion for new trial where plaintiff had failed to object to the jury verdict as inconsistent before the jury was excused); *Costa v. Sam's East, Inc.*, No. 11–0297, 2012 WL 5386921, at* 11, *15 (S.D. Ala. Oct. 31, 2012) (argument for new trial waived when not raised at trial).

[133] *See National Indus., Inc. v. Sharon Steel Corp.*, 781 F.2d 1545, 1549 (11th Cir. 1986).

defense counsel raised the argument that there were no basis for awarding economic damages in <u>any</u> amount and thus Plaintiff was precluded from recovering punitive damages under Georgia law.

In its Rule 50(a) motion, Homeward did raise the issue of whether Plaintiff's conversion claim could be supported by testimony regarding Homeward's assessment of late fees.[134]  The argument now presented post-verdict, however, is fundamentally different.  The question of whether Homeward converted or misapplied Plaintiff's funds to pay late fees obviously does not require the same response as the question of whether Plaintiff suffered an actual economic injury as a result of the fees charged.  Plaintiff responded to and the Court addressed the first argument.  At trial, Plaintiff's counsel pointed to testimony from Mr. Delbene showing that Homeward had collected fees from the suspense account.[135] Plaintiff now shows that Mr. Berry also testified that more than $6,000.00 was "taken" from Plaintiff's loan payments and applied toward fees.[136]  Thus, to the extent it is relevant here, the Court again finds that there was evidence from which the jury could reasonably conclude that Homeward converted or misapplied $6,000.00 to pay its fees.

The Court, however, will not address Homeward's present argument that there was "*no evidence of quantifiable damages in any amount*" presented at trial.  Homeward did

---

[134] Tr. Vol. II at 208-211
[135] Tr. Vol. II at 211
[136] *See* Tr. Vol. I at 83-84.

not make this argument in its Rule 50(a) motion at the close of evidence or when given the opportunity to object to the jury's instruction on damages.[137]  If, in fact, there was no evidence to support an award of economic damages, and thus punitive damages could not be awarded as a matter of law, Homeward was certainly aware of this fact before this case was sent to the jury and was required to raise the issue at that time.

B. <u>Statutory Cap on Punitive Damages</u>

Homeward next argues that, because there was no evidence of a specific intent to harm Plaintiff in this case, Georgia law caps any punitive damages to $250,000.00.  If the cap does not apply, Homeward alternatively contends that the amount awarded in this case violates due process.  In response, Plaintiff again argues that all of Homeward's arguments regarding the award of punitive damages have been waived.

After a review of the trial transcript, the Court finds that Homeward's arguments regarding "specific intent" were not waived and can be considered.  The rule barring the introduction of new arguments post-verdict does not require that the parties' prior arguments be word-for-word identical to those raised post-verdict; the Court may thus overlook some differences in regard to the content of a post-verdict motion if the issues

---

[137] *Compare, Splitt v. Deltona Corp.*, 662 F.2d 1142, 1144-45 (11th  Cir. 1981) (affirming grant of directed verdict as to punitive damages because defendant had objected to the jury charge on the same ground, and therefore the purpose of Rule 50 had been served because all parties were on notice of defendant's concern).

raised at trial were closely related.[138]   A Rule 50(b) argument may be considered, for example, even if not raised in the Rule 50(a) motion, so long as the moving party's argument was otherwise made clear at trial such as in an objection to a jury charge.[139]

In this case, Homeward did argue that there was "no evidence of specific intent" prior to the close of evidence.[140]   Although Homeward did not raise this argument in the context of punitive damages during trial, Homeward's arguments regarding the instruction on intent and emotional damages at the charge conference were closely-related to those raised in the present motion.   Because Homeward raised a similar argument earlier, Plaintiff cannot argue that she has now been ambushed with an entirely new legal argument.

Homeward, then and now, argues that there was no evidence of a specific intent to harm Plaintiff.[141]   Homeward now adds that the absence of such evidence bars an award of punitive damages in excess of $250,000.00.   Georgia law places a $250,000.00 cap on punitive damages for any tort action, unless the jury finds that "the defendant acted, or failed to act, with the specific intent to cause harm."[142]   "[S]pecific intent to

---

[138] *See Ross v. Rhodes Furniture, Inc.*, 146 F.3d 1286, 1289-90 (11th Cir. 1998) ("If the grounds argued in a motion under Rule 50(a) are "closely related" to those argued in a Rule 50(b) motion, then setting aside a jury's verdict is no surprise to the non-movant.").

[139] *See Splitt*, 662 F.2d at 1144-45.

[140] *See* Tr. Vol. II at 202 [Doc. 109] (". . . there isn't any evidence of specific intent in this case").

[141] *See id.*

[142] *Alta Anesthesia Assoc. &c. v. Gibbons*, 245 Ga. App. 79, 89 (2000); O.C.G.A. § 51-12-5.1(g).

harm" exists if "the actor desires to cause consequences of his act, or that he believes that the consequences are substantially certain to result from it."[143]

In response to Homeward's motion, Plaintiff asserts that there was sufficient evidence from which the jury could infer a "specific intent to harm."  In making this argument, Plaintiff relies on Mr. Delbene's inability to explain how Homeward arrived at the $843.58 payment, refusal to consider Plaintiff's escrow analysis, and position that Plaintiff was required to pay whatever amount Homeward demanded.[144]  Plaintiff also argues that intent may be inferred from the evidence showing that Homeward increased the escrow payment in a manner that would allow it to recoup the shortage in far less than the required twelve-month period and that Homeward refused to reconsider its position even after Plaintiff notified Homeward that she was current on her payments and that the increased escrow was improper.

The Court has considered the evidence in the light most favorable to Plaintiff, as is required under Rule 50(b), and finds, for those reasons already discussed above, that there is sufficient evidence that Homeward repeatedly acted with a reckless disregard for Plaintiff's rights.  Such willful and wanton conduct is sufficient to sustain an award of punitive damages.[145]  The same evidence, however, does not support a finding that

---

[143] *J.B. Hunt Transport, Inc. v. Bentley*, 207 Ga. App. 250, 255 (1996).

[144] Delbene Dep. at 56-59, 110, 165-66 [Doc. 46].

[145] *J.B. Hunt Transport, Inc.*, 207 Ga. App. at 255 ("Evidence of such 'conscious indifference to consequences' supported the submission of the issue of punitive damages to the jury . . . ."). *See also E. Prop. Dev. LLC v. Gill*, -- F. App'x --, 2014 WL 868613, at *3 (11th Cir. Mar. 6, 2014) ("A willful repetition of . . . conversion can authorize a claim for punitive damages . . . .").

Homeward acted with the specific intent to harm, as is required to pierce the $250,000.00 cap on punitive damages.[146]  Again, an actor has "specific intent" only if he "desires to cause consequences of his act, or that he believes that the consequences are substantially certain to result from it."[147]  "[T]he mere knowledge and appreciation of a risk, short of a substantial certainty, is not the equivalent of intent."[148]

In this case, there is no evidence that Homeward acted with the "specific intent" to cause Plaintiff emotional distress or to wrongfully foreclose on her property.  There is no evidence suggesting that Homeward bore any particular animus against Plaintiff or that Homeward would have been substantially enriched by harming Plaintiff – either emotionally or through foreclosure.  There is likewise no evidence showing that Homeward would have otherwise *desired* to cause Plaintiff's injuries or that it *believed* those injuries were substantially certain to result from its obstinacies and demands for payment.  All evidence instead suggests that Homeward intended and believed its conduct would cause Plaintiff to make the payments demanded.  It is in fact unclear what benefit Homeward would reap by forcing a debtor into foreclosure; and, other than the collection of some service fees, there is no evidence that Homeward reaped any

---

[146] "These two inquiries are separate and distinct." *Tomczyk v. Jocks & Jills Restaurants, LLC*, 513 F. Supp. 2d 1351, 1363 (N.D. Ga. 2007), *rev'd on other grounds*, 269 F. App'x 867 (11th Cir. 2008) ("[T]here is no inconsistency between a jury finding of 'willful or wanton' acts 'directed' toward Plaintiff along with a finding that there was no 'specific intent to cause harm.").

[147] *J.B. Hunt Transport, Inc.*, 207 Ga. App. at 255.

[148] *Id*.

great financial benefit here.  The sale of the property in fact resulted in a huge loss,[149] and Homeward did not attempt to collect the balance from Plaintiff after the foreclosure.[150]

The Court therefore finds that, while a reasonable jury could conclude that Homeward was consciously indifferent to any harm it caused Plaintiff so as to support an award of punitive damages, the evidence was not sufficient to permit the jury to go one step further and find a "specific intent to harm" as is required to justify an award of punitive damages in excess of $250,000.00.  The jury's award of $3,000,000.00 is accordingly in excess of what is permitted under Georgia law, and the punitive damages award must be reduced to $250,000.00 pursuant to O.G.C.A. § 51-12-5.1(g).  To this extent, Homeward's Renewed Judgment as a Matter of Law is **GRANTED**.

In light of this, the Court need not consider Homeward's Motion for New Trial on this ground or whether the $3,000,000.00 award violated due process.

C.  Jury's Award of Damages was Not Excessive

Finally, Homeward contends that the jury's award of punitive and emotional distress damages was excessive and unsupported by the evidence presented at trial.  "In implementing Rule 59, courts have long recognized that a new trial may be warranted by an excessive . . . jury award."[151]  Thus, "[w]hen it is determined that the damages

---

[149] Delbene Depo. at 155, 158-159.
[150] Tr. Vol. II at 124.
[151] *Johnson v. Clark*, 484 F .Supp. 2d 1242, 1256 (M.D. Fla. 2007).

awarded by a jury are excessive but the finding of liability is supported by the evidence, it is appropriate to order remittitur or a new trial limited to the issue of damages."[152]

Where state law claims are involved, the issue of the excessiveness of a damage award is governed by federal standards but guided by state law. "In reviewing an award of punitive damages, . . . the role of the district court is to determine whether the jury's verdict is within the confines set by state law, and to determine, by reference to federal standards developed under Rule 59, whether a new trial or remittitur should be ordered."[153]  "The same distinction necessarily applies where the judgment under review is for compensatory damages: State substantive law controls what injuries are compensable and in what amount; but federal standards determine whether the award exceeds what is lawful to such degree that it may be set aside by order for new trial or remittitur."[154]

The Eleventh Circuit "adheres to an exceedingly high standard for granting a new trial on those grounds" under Rule 59.[155]  The challenged award must be, not only "grossly excessive," indicating that "the jury's verdict was swayed by passion and prejudice," but also "so excessive as to shock the conscience of the court."[156]

---

[152] *Id*. (citing *Wilson v. Taylor*, 733 F.2d 1539, 1549–50 (11th Cir.1984), *overruled on other grounds by Jett v. Dallas Indep. Sch. Dist.*, 491 U.S. 701, 109 S.Ct. 2702, 105 L.Ed.2d 598 (1989)).

[153] *Gasperini v. Ctr. for Humanities, Inc.*, 518 U.S. 415, 463 (1996) (quoting *Browning-Ferris Indus. of Vt., Inc. v. Kelco Disposal, Inc.*, 492 U.S. 257, 279 (1989)).

[154] *Id*. at 463-64.

[155] *Warren v. Cnty. Com'n of Lawrence County, Ala.*, 826 F. Supp. 2d 1299, 1304 (N.D. Ala. 2011).

[156] *Id*. (quoting *Goldstein v. Manhattan Indus., Inc.*, 758 F.2d 1435, 1447–48 (11th Cir. 1985)).

### 1. *Award of Punitive Damages*

In its Rule 59 motion, Homeward contends that the jury's award of punitive damages is excessive.  In light of the reduction of the punitive damages under O.G.C.A. § 51-12-5.1(g), *supra*, the Court is hesitant to further interfere with the jury's findings in this case as to punitive damages.  Furthermore, during the trial of this case, there was sufficient evidence from which the jury could have reasonably found (1) that Homeward callously and carelessly ignored its potential error in calculating Plaintiff's escrow despite the fact that it could not justify the increase and Plaintiff notified it of an error; (2) that Homeward took advantage of its position of power over Plaintiff and caused her default and foreclosure; and (3) that Homeward frightened, harassed, and embarrassed Plaintiff, causing her severe emotional distress to the point of physical illness.   Under Georgia law, punitive damages are awarded to penalize, punish, or deter.[157]  A punitive damages award of $250,000.00 in this case is consistent with these purposes, and the Court does not find this amount to be grossly excessive.

### 2. *Award of Emotional Distress Damages*

The only remaining question before the Court is whether the record supports the award of emotional damages.   In assessing the appropriateness of an award of compensatory damages, courts will look to: "(1) the size of the award; (2) the rational relationship between the award and the evidence adduced at trial; and (3) awards in

---

[157] O.G.G.A. § 51–12–5.1(c).

similar cases."[158]  The Eleventh Circuit has held, however, that "[t]he standard of review for awards of compensatory damages for intangible, emotional harms is deferential to the fact finder because the harm is subjective and evaluating it depends considerably on the demeanor of the witnesses."[159]  Thus, "[w]hen the jury's verdict is within the bounds of possible awards supported by the evidence, its award should not be disturbed."[160]

In this case, Homeward asserts that the jury's emotional damages award of $500,000.00 was "exorbitant" because the evidence merely showed that Plaintiff and her son became "frustrated" at Homeward's handling of their disagreement.   The evidence showed more than this, however.  Plaintiff and her family presented evidence of her stress and worry about the state of her loans and the effect it was having on her son; her public humiliation resulting from the foreclosure of her property; and the toll this has taken on her mentally and physically.

The evidence also showed that Plaintiff sought treatment for her mental health problems, and Plaintiff's psychologist testified at trial regarding her emotional distress. The psychologist in fact diagnosed Plaintiff with major depression[161] and stated that her dispute with Homeward was the precipitating and recurring cause of her depression.[162] The psychologist testified that Plaintiff perceived this dispute as a "life or death

---

[158] *Copley v. BAX Global, Inc.*, 97 F.Supp.2d 1164, 1171 (S.D. Fla. 2000).
[159] *Munoz v. Oceanside Resorts, Inc.*, 223 F.3d 1340, 1349 (11th Cir. 2000) (quoting *Ferrill v. Parker Group, Inc.*, 168 F.3d 468, 476 (11th Cir. 1999)).
[160] *Carter v. Decision One Corp.*, 122 F.3d 997, 1006 (11th Cir. 1997).
[161] Sappington Dep. at 7 [Doc. 82-2].
[162] *Id*. at 6, 8, 19, 22, 59.

situation,"[163] and that she worried about the loss of income, her reputation, and standing among neighbors to the point where she became physically ill.[164]

Plaintiff's psychologist also testified, however, that Plaintiff may have had a history of depression,[165] that other significant life factors may have also contributed to her depression,[166] and that Plaintiff was able to engage in normal life activities during her treatment.[167]   There was further evidence that Plaintiff's son, Adam McGinnis, handled the incessant phone calls and collection letters and that Plaintiff no longer lives or engages business in the community in which the foreclosure occurred.

The jury heard all of this evidence, was instructed on the parameters for finding emotional damages, and then awarded Plaintiff $500,000.00.  Reasonable people, and thus reasonable juries, could of course differ as to the appropriate amount that would compensate Plaintiff for the mental anguish she suffered. Homeward's post-verdict argument, however, fails to identify sufficient evidence or any analogous case authority to support a finding that the jury's verdict was swayed by passion and prejudice or that the $500,000.00 award must otherwise be considered grossly excessive.   An award of this size has in fact been upheld by the Eleventh Circuit even in the absence of medical

---

[163] *Id*. at 12.
[164] *Id*. at 14.
[165] *Id*. at 31.
[166] *Id*. at 30-34, 45, 48, 53, 55.
[167] *Id*. at 45, 49.

testimony to support the plaintiffs' self-serving claims of upset, embarrassment, humiliation, and depression.[168]

In the absence of any evidence or analogous law in support of remittitur, the Court can discern no reason to substitute its judgment for that of the jury as to a reasonable amount to compensate Plaintiff for her emotional distress.  There is no reason to assume that a jury - which has simply discounted the testimony favorable to the defense and the arguments of defense counsel – has misapprehended a case.[169]  The Court is likewise not permitted to "set aside the verdict merely because [it] might have awarded a different amount of damages."[170]  Here, the jury was clearly instructed to consider only Plaintiff's emotional distress and only that distress proximately caused by Homeward's conduct.[171]  The Court must now assume that the jury followed its instructions unless evidence is presented to the contrary.[172]  No such evidence is presented here.  This Court will thus defer to the fact finder and will not disturb the jury's verdict as to emotional damages.

---

[168] *See Bogle v. McClure*, 332 F.3d 1347, 1359 (11th Cir. 2003) (upholding $500,000.00 emotional damage award where plaintiffs testified that defendants conduct caused them to be "upset," "embarrassed," "humiliated," "ashamed," and "depressed" even though plaintiffs did not present any independent medical evidence of emotional distress).  *See also, Johnson v. Clark*, 484 F. Supp. 2d 1242, (M.D. Fla. 2007) (reducing damages for loss of professional reputation and mental pain and suffering to $500,000.00); *Forsberg v. Pefanis*, No. 1:07–cv–03116, 2009 WL 4798124, at * 8 (N.D. Ga. Dec. 8, 2009) (rejecting the contention that that there is a bench mark or limit for damages on emotional distress at $150,000.00 and awarding $1,500,000.00 for emotional damages in a sexual harassment case); *Fabe v. Floyd*, 199 Ga. App. 322, 330, 405 S.E.2d 265 (1991) (upholding $450,000.00 award even though sole evidence of mental distress was businessman's unrebutted testimony).

[169] *See Myers v. Central Florida Invs., Inc.*, 592 F.3d 1201, 1213 (11th Cir. 2010).

[170] 11 Charles Alan Wright, Arthur R. Miller, & Mary Kane, *Federal Practice and Procedure* § 2807 (3d ed.).

[171] Jury Instructions at 21-22 [Doc. 91].

[172] *Shannon v. United States*, 512 U.S. 573, 585 (1994).

## CONCLUSION

For these reasons, Homeward's Renewed Motion for Judgment as a Matter of Law [Doc. 105] is **GRANTED** in part and **DENIED** in part; and it is **ORDERED** that the punitive damages award be reduced to $250,000.00.   Homeward's Motion for a New Trial and/or Remittitur [Doc. 104] is **DENIED**.

> **SO ORDERED,** this 30th day of June, 2014.

> S/  C. Ashley Royal
> C. ASHLEY ROYAL
> UNITED STATES DISTRICT JUDGE

JLR/adp